## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-2137

ERIC GUTMAN, individually and on behalf of
all others similarly situated,

      Plaintiff,

  v.

POINTSBET USA INC., a Delaware
corporation; POINTSBET NEW YORK LLC, a
New York limited liability company;
POINTSBET INDIANA LLC, a Delaware
limited liability company; POINTSBET IOWA
LLC, a Delaware limited liability company;
POINTSBET MICHIGAN LLC, a Delaware
limited liability company; POINTSBET NEW
JERSEY LLC, a New Jersey limited liability
company; POINTSBET COLORADO LLC, a
Delaware limited liability company;
POINTSBET ILLINOIS LLC, a Delaware
limited liability company; POINTSBET WEST
VIRGINIA LLC, a Delaware limited liability
company; POINTSBET VIRGINIA LLC, a
Delaware limited liability company; and
POINTSBET PENNSYLVANIA LLC, a
Delaware limited liability company,

      Defendants.

---

## COMPLAINT

---

Plaintiff Eric Gutman ("Plaintiff" or "Gutman"), by and through his undersigned counsel,

brings this Complaint against Defendants PointsBet USA Inc. ("PointsBet"), PointsBet New York

LLC, PointsBet Indiana LLC, PointsBet Iowa LLC, PointsBet Michigan LLC, PointsBet New

Jersey LLC, PointsBet Colorado LLC, PointsBet Illinois LLC, PointsBet West Virginia LLC, PointsBet Virginia LLC, and PointsBet Pennsylvania LLC (collectively, "Defendants") and states and alleges as follows:

## INTRODUCTION

1.     This is a case about Defendants' systematic campaign to mislead consumers across the United States in an effort to acquire market share in the competitive world of sports betting.

2.     In frenetic marketing attempts to acquire new consumers in a new and highly competitive market, Defendants engaged in a deliberate campaign to entice consumers to its platform with empty promises of "risk-free" promotions and "refunds" if the users' bets failed to secure winnings.

3.     Instead, as users would learn if they lost their "risk-free" bets, Defendants offered limited-duration vouchers that could only be used to place a second round of bets. These vouchers could not be exchanged for cash, could not be withdrawn, and expired after only 30 days.

4.     Only if users won their second round of bets at disfavored odds could they hope to recoup losses associated with their initial bets—making this offer anything but "risk-free."

5.     Plaintiff brings this suit against all Defendants for violation of the Colorado Consumer Protection Act (Colo. Rev. Stat. §§6-1-101, *et seq*.), negligent misrepresentation, intentional misrepresentation, fraudulent inducement, quasi contract/unjust enrichment/restitution, and violation of N.Y. Gen. Bus. Law §§349 & 350.

## PARTIES

6.     Plaintiff Eric Gutman is, and at all times relevant to this action was, a resident and citizen of New York, who was enticed into spending money on Defendants' sports betting platform by Defendants' advertisements and promotional material.

7.      Defendant PointsBet USA Inc. ("PointsBet USA") is a Delaware corporation with its headquarters located in Denver, Colorado.

8.      Defendant PointsBet New York LLC ("PointsBet New York") is a New York limited liability company registered to do business in New York.

9.      Defendant PointsBet Indiana LLC ("PointsBet Indiana") is a Delaware limited liability company registered to do business in Indiana.

10.      Defendant PointsBet Iowa LLC ("PointsBet Iowa") is a Delaware limited liability company registered to do business in Iowa.

11.      Defendant PointsBet Michigan LLC ("PointsBet Michigan") is a Delaware limited liability company registered to do business in Michigan.

12.      Defendant PointsBet New Jersey LLC ("PointsBet New Jersey") is a New Jersey limited liability company organized in New Jersey.

13.      Defendant PointsBet Colorado LLC ("PointsBet Colorado") is a Delaware limited liability company registered to do business in Colorado.

14.      Defendant PointsBet Illinois LLC ("PointsBet Illinois") is a Delaware limited liability company registered to do business in Illinois.

15.      Defendant PointsBet West Virginia LLC ("PointsBet West Virginia") is a Delaware limited liability company registered to do business in West Virginia.

16.      Defendant PointsBet Virginia LLC ("PointsBet Virginia") is a Delaware limited liability company registered to do business in Virginia.

17.      Defendant PointsBet Pennsylvania LLC ("PointsBet Pennsylvania") is a Delaware limited liability company registered to do business in Pennsylvania.

18.      Defendants PointsBet New York, PointsBet Indiana, PointsBet Iowa, PointsBet

Michigan, PointsBet New Jersey, PointsBet Colorado, PointsBet Illinois, PointsBet West Virginia, PointsBet Virginia, and PointsBet Pennsylvania (collectively, the "PointsBet Subsidiaries") are all wholly owned subsidiaries of Defendant PointsBet USA.

19.     Upon information and belief, the PointsBet Subsidiaries do not maintain separate corporate identities from one another or from PointsBet USA.

20.     PointsBet USA and the PointsBet Subsidiaries (collectively, "PointsBet") collectively provide the sports betting services that are the subject of this suit.[1]

21.     Upon information and belief, while each of the PointsBet Subsidiaries maintains an address in their respective states of registration, they are all wholly-controlled by PointsBet USA and operated from the PointsBet USA headquarters in Denver. Thus, their principal place of business is, in fact, located in Denver, Colorado.

22.     Upon information and belief, the marketing, advertising, and promotional materials that are the subject of this suit were designed, prepared, and disseminated by PointsBet USA from its Colorado headquarters, where its marketing team works.

23.     Upon information and belief, these promotions are collaboratively designed by PointsBet USA, in concert with the PointsBet Subsidiaries.

24.     Upon information and belief, PointsBet USA wholly owns and controls each of the PointsBet Subsidiaries.

25.     Upon information and belief, PointsBet USA and the PointsBet Subsidiaries have common directors and officers, and these directors and officers act in the benefit of PointsBet

---

[1]  *See, e.g.*, Terms & Conditions, PointsBet (Nov. 22, 2021), available at https://ny.pointsbet.com/terms-and-conditions ("'PointsBet' or 'Pointsbet.com' is the business name of PointsBet USA Inc., its affiliated entities, and its related mobile app ('PointsBet'). All references to 'we', 'us' and 'our' in these general Terms of Use and Conditions ('Rules' 'Terms' or 'Terms and Conditions') are a reference to PointsBet.").

USA, and not in the interest of the PointsBet Subsidiaries.

26.     Upon information and belief, PointsBet USA caused the PointsBet Subsidiaries to be organized.

27.     Upon information and belief, the PointsBet Subsidiaries have grossly inadequate capital. Their expenses are paid for by PointsBet USA, and their profits are funneled to PointsBet USA.

28.     Upon information and belief, the PointsBet Subsidiaries have no independent business except with PointsBet USA.

29.     Upon information and belief, the distinctions between the PointsBet Subsidiaries and PointsBet USA are regularly confused and disregarded.

30.     Upon information and belief, PointsBet USA and the PointsBet Subsidiaries were, at all times relevant to this action, the instrumentalities and alter egos of one another, and were direct participants in the actions and inactions described herein.

**JURISDICTION AND VENUE**

31.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d) because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and this is a class action in which at least one member of the putative class is a citizen of a foreign state, and Defendants are citizens of a State in the United States. The proposed class consists of more than one hundred persons. Further, the claims can be tried jointly because they involve common questions of law and fact that predominate over the individual issues, as outlined below.

32.     This Court has both specific and general personal jurisdiction over Defendants because Defendants do business in this District on a systematic and ongoing basis; hold or own

real and personal property within this District; derive substantial revenue from their contacts within this District; and are headquartered or maintain offices within this District. Moreover, on information and belief, Defendants created and published the deceptive offer from within this District.

33.     Venue is appropriate in this District pursuant to 28 U.S.C. §1391 because Defendants reside in this District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District through offices maintained by Defendants in this district.

## FACTUAL ALLEGATIONS

34.     PointsBet is a global online gaming operator that runs sports betting operations in Colorado, Illinois, Indiana, Iowa, Michigan, New Jersey, New York, Pennsylvania, West Virginia, and Virginia.

35.     Its partners include CBS Sports, the National Football League, the National Basketball Association, Major League Baseball, and the National Hockey League. Indeed, in 2021 it was among only four sports betting companies selected to partner with the National Football League.

36.     In 2020, PointsBet announced a five-year partnership with NBC Universal to make it the official sports betting partner of NBC Sports, which resulted in NBC Sports acquiring a 4.9% equity stake in PointsBet.

37.     From 2019 to 2021, PointsBet enjoyed meteoric growth in the United States. Its total handle catapulted by nearly 458.4 percent in the year 2021 alone, while its gross and net win each increased by 481 percent.[2]

---

[2] https://www.casino.org/news/pointsbet-share-sale-will-fund-ambitious-us-expansion-plans/

38.     In fact, PointsBet itself claims to be the fastest growing sports betting company in the United States.

39.     During this same period, however, PointsBet found itself facing increased competition in its highly lucrative U.S. markets. In the third quarter of 2021, its share of the total bets placed began to see a significant overall decline.[3]

40.     PointsBet blamed this downturn on the "highly competitive" promotional environment in the sports betting world, but promised it was "not going to get caught up in an arms race on marketing."[4]

41.     PointsBet later reiterated this point, with its CEO Sam Swannell noting, "In a market where operators were giving away $3,000 free bets, that's going to be very attractive to the average person, and that might be where they go first. But once that's no longer available, consumers ultimately end up at the product that gives them the best service."[5]

42.     In keeping with these ideals, PointsBet expended a mere $21 million on marketing efforts during the third quarter of 2021.[6]

43.     But all of that changed when the company saw it was losing market share.

44.     In the first half of 2022, PointsBet expended $78.2 million on marketing expenses.[7]

45.     It was not enough, however, to merely entice customers. In a war to draw consumer attention, PointsBet needed a way to make them stay.

46.     As PointsBet's Chief Strategy Officer, Eric Foote, recently lamented, "The more

---

[3] https://www.legalsportsreport.com/58597/pointsbet-earnings-call-q1-2022/
[4] Id.
[5] https://www.legalsportsreport.com/65487/pointsbet-earnings-call-february-2022/
[6] https://www.legalsportsreport.com/58597/pointsbet-earnings-call-q1-2022/
[7] https://investors.pointsbet.com.au/wp-content/uploads/2022/02/1.-HY22-Appedix-4D-and-HY-Report.pdf

aggressive you get with those offers – customers are getting smarter, they're more intelligent, they're shopping around more – what's the churn rate, how do you retain that customer after giving such a large bonus or deposit match? You have to retain them."[8]

47.    PointsBet therefore had a problem: it needed to not only attract customers, but find a way to retain them on its platform so that they would not simply take advantage of its promotions and then leave to a competitor. It needed a plan to keep users tied to its platform.

### PointsBet's Advertising Blitz

48.    "Since online sports gambling became legal in New York last month, New Yorkers have been bombarded with misleading ads on social media and streaming sites that claim 'risk-free' bets and '$1,000 welcome offers,' which sound like free money, but often come with strings attached without consumers' awareness. . . . Online sports betting companies that fumble their advertising to mislead New Yorkers can expect to hear from my office." – New York Attorney General Letitia James, February 10, 2022.[9]

49.    When PointsBet launched in New York in January of 2022, it ran aggressive advertising campaigns that included TV, radio, and online promotions all offering sign-up offers of $500 to $2,000.

50.    To address its problem of needing to attract customers as well as retain them, and reclaim its market share, PointsBet embarked on an aggressive campaign to lure in new customers. Unbeknownst to those customers, however, its promised promotional offer was specifically

---

[8] Kris Johnson. *How Long Will Sports Betting Sign-Up Bonuses Last?*, Gaming Today (July 25, 2022), *available at* https://www.gamingtoday.com/news/sports-betting-sign-up-bonuses/.
[9] CONSUMER ALERT: Attorney General James Warns New Yorkers of Deceptive Online Sports Betting Companies Ahead of Super Bowl, NYS Attorney General (Feb. 10, 2022), *available at* https://ag.ny.gov/press-release/2022/consumer-alert-attorney-general-james-warns-new-yorkers-deceptive-online-sports.

designed to force them to stay on its platform and place additional bets, or else forfeit the promotion entirely.

51.     Worse, those who did remain did not receive the benefit they were specifically promised.

52.     PointsBet's marketing strategy was part of an intentional initiative to capitalize on the addictive nature of gambling, and the established susceptibility of online sports betters.

53.     The National Council for Problem Gambling ("NCPG") has raised concerns since 2018 about the particular susceptibility of online sports bettors. Among other things, its research has established that the rate of gambling problems among sports bettors, and particularly online sports bettors, are over twice those of gamblers in general.[10]

54.     Of particular note, the NCRB observed, "Aggressive promotions in all forms of marketing and advertising make it more difficult for sports bettors who are trying to curtail their gambling. Ads that emphasize 'free play,' tout the ease of placing a bet, and offer risk-free bonuses are particularly problematic."[11]

55.     In response to these and other risks, the NCPG established the Safer Sports Betting Initiative to specifically help reduce the risk of gambling problems created by aggressive advertising campaigns and other risks.

56.     Since 2012, the NCPG has also promulgated its Internet Responsible Gaming Standards. In the 2021 update to these standards, the NCPG included the following standard: "Advertising is not misleading about outcomes of gambling and does not misrepresent odds of

---

[10] https://www.ncpgambling.org/wp-content/uploads/2020/01/Sports-gambling_NCPGLitRvwExecSummary.pdf
[11] *Id.*

winning/losing."[12]

57.    Speaking specifically about the use of "risk-free" language, Cait Huble, the NCPG's director of communications, noted, "Overall, 'risk-free' has always been problematic language to us because it's not truly risk-free. From a messaging perspective, it was deceptive."[13]

58.    As a long-time member of the NCPG, PointsBet was well aware of this research and the NCPG's research on the effect of misleading advertisements at the higher risk demographic of online sports bettors.

59.    Nevertheless, PointsBet continued to advertise its promotional offers as "risk-free."

60.    In fact, in July of 2022, PointsBet joined with the NCPG in its Responsible Gaming Research Initiative—all while continuing to advertise "risk-free" bets on its platform and across various advertising campaigns.

61.    In a series of promotional advertisements, the PointsBet website, and more, PointsBet repeatedly invited users, like Plaintiff, to take advantage of its "risk-free" promotional offers.

62.    On its homepage, it enticed users to take advantage of a "$2,000 risk free bet at signup" without any asterisks or reference to terms and conditions (indeed, the terms and conditions were not even accessible from this page):[14]

//

//

//

---

[12] https://158bvz3v7mohkq9oid5904e0-wpengine.netdna-ssl.com/wp-content/uploads/2022/01/NCPG-IRGS-May-2021.pdf
[13] https://sportshandle.com/fanduel-promotional-pivot-risk-free-no-sweat/
[14] https://pointsbet.com/



63.     On its Promotions page, PointsBet prominently displayed this offer:



64.     In nearly microscopic print, the offer disclosed merely that "T&C's apply."

65.     Nothing indicates that "T&C" means "Terms and Conditions," and they are not hyperlinked from this advertisement.

66.     Below this offer, PointsBet made a few additional disclosures:

> Get up to a $500 Refund (in Free Bets) if your 1st Fixed Odds Bet loses and up to a $1,500 Refund (in Free Bets) if your first PointsBetting Wager loses!. New Customers Only! Use Code - WELCOME - to take advantage!

67.     Nothing here indicates that the "refund" is, in fact, non-refundable.

//

//

//

//

68.    Notably, in or around June of 2022 (and in response to a lawsuit filed by another of its customers), PointsBet updated this fine print to read:



69.    Similarly, PointsBet's various social media promotions used to navigate users to pages such as this one:

//

//

//

//

//

70.    Only by hovering over the miniscule "click here for more info" language did individuals encounter this screen:



//

//

//

//

//

//

//

71.    However, attempting to click the link to the Terms and Conditions yielded the following result:



72.    The Terms and Conditions were not otherwise available on the offer screen, via link or otherwise.

73.    In other words, PointsBet repeatedly enticed consumers with promises of "Risk-Free" bets and offers of "refunds" for those who failed to place successful bets.

74.    These offers promised that even if consumers lost their bets, those bets would be

free of any risk, because PointsBet would refund the amount of the bet.

75.   But that was not true.

76.   If a user who had signed up using one of these promotions placed an unsuccessful bet, that user would not receive the promised refund, but would instead receive credits for "free bets" in the amount lost, up to the advertised caps.

77.   Free bet credits, however, are subject to numerous restrictions.

78.   Free bet credits cannot be redeemed for cash.

79.   Free bet credits are non-transferable.

80.   Free bet credits expire in 30 days.

81.   There are also significant differences in payouts for bets placed using free bet credits, as opposed to ordinary bets.

82.   When a user places an ordinary bet, and wins, that user receives back the amount of money bet on the outcome, plus the payout for that user's winnings.

83.   In other words, a user who places a bet for $500 on a bet that pays out $300 will receive $800 if he wins: $500 as reimbursement for the amount wagered, plus $300 in winnings.

84.   However, if a user were to place the same $500 bet using PointsBet's free bet credits, and won, **that user would receive back only the $300 in winnings**.

85.   Consumers lured into creating PointsBet accounts and spending money on bets in reliance on PointsBet's promises began by placing ordinary bets, which were promised to be "risk free" because consumers would receive "refunds" if they lost these bets.

86.   Once they lost these ordinary bets, however, the only thing they received was a limited expiration voucher good for a free bet in the same amount of their initial investment.

87.   At that point, if they lost the second bet, they lost entirely the value of their initial

bet. Even if they won, however, they received back only the winnings for the second bet and not the amount wagered.

88.     Thus, in order to fully recuperate the amounts lost in their initial wager, users would need to win bets placed on disfavored outcomes (*i.e.*, where the odds of winning were less than 50%).[15] Otherwise, even if they won their second round of wagers, they would still have lost money overall. In the vast majority of cases, this resulted in a net loss to users who did not win on their first bet placed.

89.     Users did not receive refunds for these losses.

90.     Users who failed to place their free bet during the thirty-day period when the promotional voucher was valid also lost the entire value of their initial bet.

91.     Thus, despite its "risk free" and "refundable" assurances to the contrary, PointsBet's consumers still incur significant risk when they place bets on its platform, even when taking advantage of its promotional offers.

92.     At no point prior to placing their initial bets were users informed that their "refunds" would come in the form of non-redeemable vouchers.

93.     At no point prior to placing their initial bets were users informed that their "refunds" would be subject to a thirty-day expiration limit.

94.     At no point prior to placing their initial bets were users informed that they would be required to place a second round of bets in order to receive their promised refunds.

95.     At no point prior to placing their initial bets were users informed that there was a

---

[15] For those unfamiliar with sports betting, a bet whose payout will match the amount wagered dollar for dollar is not a bet with a 50% chance of success. If it were, sports betting companies would never make a profit. Instead, the payout is set at a rate that reflects the company's share, or "take," on the bet. Thus, to obtain a dollar-for-dollar match, a user must place a bet with a substantially lower chance of success. As they say, the house always wins.

risk they would not recover the dollar value of their initial bets.

96.     These were all material omissions, in that they significantly altered the perceived value of the offer PointsBet advertised.

97.     Additionally, PointsBet repeatedly promised, across multiple platforms and advertising campaigns, that these initial bets would be "risk-free."

98.     In actuality, these initial bets carried a significant risk of total, or near total loss.

99.     PointsBet therefore affirmatively misled consumers with its misleading statements of fact.

100.    Additionally, Colorado law specifically prohibits sports betting companies from describing offerings like these as "risk free" in the first place: "All offers and bonuses must . . . [n]ot be described as risk free if the customer needs to incur any loss or risk their own money to use or withdraw winnings from the risk free bet." 1 CCR 207-2 Rule 9.4(d).

101.    Colorado law further requires that advertising materials "include any material terms and conditions for that offer or bonus and have those material terms in close proximity to the headline claim of the offer or bonus and in reasonably prominent size." 1 CCR 207-2 Rule 9.4(b).

102.    Colorado law also prohibits anything from being described as free if a customer "has to risk or lose their own money or has conditions attached to their own money," without accompanying disclosures. 1 CCR 207-2 Rule 9.4(c).

103.    Upon information and belief, since around the time when PointsBet began running these promotional offers, it has received countless consumer complaints regarding this promotion. Rather than refund consumers their money, PointsBet has doubled down—blaming its customers for the actual consumer confusion caused by its misleading advertisements. It tells them, "Unfortunately, all of this information was available to you when you signed up and you agreed

to these T&Cs when you created your account."

104.    It is worth noting that, in or around June of 2022 (only after it was sued by another of its customers), PointsBet significantly altered the design of its promotional pages, altering its representations regarding its offers:



//

//

//

//

//

//

//

//

//

//

105.    Clicking on the "Full Promotional Terms and Conditions" link now reveals the following:



**Description of Promotion**

Get up to two "Risk Free" Bets when you open a new account with PointsBet! All new users who successfully establish an active and verified PointsBet Account using the unique promo code applicable to this offer are eligible to receive up to two (2) Risk-Free Bets:  one (1) Risk-Free Fixed Odds Wager worth up to $500, and one (1) Risk-Free PointsBetting Wager worth up to $1,500. "Risk Free" means that if your first settled Fixed Odds and/or PointsBetting Wager loses, you are eligible to receive Free Bet Credits in the amount of the losing wager (up to the stated maximums).  If your first Fixed Odds and/or PointsBetting Wager wins, is voided, or results in a push, you are ineligible to receive the Free Bet Credits.  See below for more details.

**Free Bet Credit Restrictions:**

- Free Bet Credits will not be included in any winnings (e.g., if you place a $20 Free Bet that wins $15, you will only receive the $15 in winnings instead of $35 (the original cash stake plus winnings)).
- Maximum Number of Free Bet Credits: 2
- Maximum Free Bet Credit amounts: Up to $500 in Free Bet Credits for your first losing Fixed Odds Wager, and up to $1,500 in Free Bet Credits for your first losing PointsBetting Wager.
- Free Bet Credits will be processed within 24 hours of bet settlement.
- Free Bet Credits expire 7 days from issuance.
- Free Bet Credits cannot be redeemed for or withdrawn as cash at any time.
- Free Bet Credits can only be redeemed online or in-app with a valid PointsBet Account.
- Free Bet Credits do not count towards qualifying for any other promotional offers.
- Free Bet Credits can be split equally up to four times (e.g., a $100 Free Bet can be split into four $25 Free Bets).
- Free Bet Credits will not be returned if a bet placed using Free Bet Credits becomes void.
- Bets placed using Free Bet Credits cannot be cashed out using the Cash Out feature.

106.    None of these disclosures were available to consumers prior to June of 2022. Since then, the disclosures still appear in a separate page via hyperlink, and not directly on the page itself, in violation of Colorado law.

107.    To this day, in fact, attempting to click on various "Terms and Conditions" links across the site often yields a broken link to a webpage that never loads: https://pointsbet.com/terms-and-conditions.

108.    Additionally, the "Terms and Conditions" available elsewhere on the website do

not include the specific terms of the promotional offerings, except by reference.

109.    If users are able to locate the Terms and Conditions, the document itself contains almost no information on the "risk free" promotions. In fact, the only reference to "risk-free" in the Terms and Conditions is this:



**4.10. OTHER PROMOTIONS**

1. From time to time, PointsBet will offer other promotions on individual sporting events. Current promotions available to you can be viewed in the "promotions" tab after logging in to your account. Terms and Conditions for each promotion can be found by clicking on the respective promotion on the promotions tab. Some commonly used promotion types include, but are not limited to: Fixed price money back promotions, early payout offers, enhanced prices, booster odds, good karma payouts, no juice spreadlines, risk free promotions, parlay refund money back promotions, points protection bonus, -105 spreadlines, and double winning promotions.

110.    And the only reference in the Terms and Conditions to "free bets" is this:



11. To avoid the abuse of promotions offered by us from time to time, Booster Features are not available in conjunction with promotions including, but not limited to, free bets, bets placed using non-withdrawable funds or any bets placed which would qualify customers to receive a free bet, bonus or promotion.

111.    In other words, prior to June of 2022, PointsBet was specifically enticing consumers with the promise of "risk-free" bets which were, in fact, not risk free at all, and made no disclosures *whatsoever* as to any promotion-specific terms, except to reference, in passing, that there were terms and conditions available for each relevant promotion.

112.    But, once again, until June of 2022, the links to PointsBet's promotional Terms and Conditions were broken.

113.    Even if the links had not been broken, the promotional Terms and Conditions were not conspicuous, were not clearly disclosed to consumers, and were vague and ambiguous as to their terms, such that a reasonable consumer would not have understood their "risk-free" bet was subject to loss.

114.    By way of contrast, PointsBet's competitors offer clear language regarding their offers' terms. Bets that are advertised as "risk free," even those that use a "free bet" system, allow players to cash out their free bets in lieu of placing them. Those that do not allow players to cash out of their free bets use different language that does not suggest to a user that their bet will be free of risk.

115.    PointsBet's decision to advertise "refunds" and "risk-free" betting was part of a deliberate bait-and-switch campaign designed to trap consumers into placing future bets.

116.    In adopting this strategy, PointsBet was specifically leveraging the knowledge that its consumer base was particularly susceptible to addictive gambling behaviors, and was therefore more likely to continue placing bets on its platform even after failing to receive the expected benefits of its promotions.

117.    In answer to its CSO's question, "[H]ow do you retain that customer after giving such a large bonus or deposit match?" PointsBet's answer is clear: trick them into staying.

**Plaintiff Eric Gutman**

118.    Plaintiff Eric Gutman is a resident of the state of New York.

119.    In March of 2022, in response to numerous advertisements he had seen as part of PointsBet's aggressive advertising campaign, he placed a "risk-free" bet in reliance on PointsBet's "WELCOME" promotion.

120.    This promotion, depicted above, promises users that they will receive up to $500 in refunds for their first bet placed, and up to $1,500 in refunds for their second bet placed, should the bets fail to result in winnings.

121.    The promotion also described itself as "risk-free."

122.    Plaintiff Gutman had taken advantages of similar offers on other platforms. Based

on his experience with other sports betting companies in the industry, and on PointsBet's own representations, he understood that he would receive a refund in the event that the placed bet failed to secure the earnings he sought.

123.   In reliance on these representations, Plaintiff Gutman placed his first $500 bet—one with deliberately long odds and a low chance of success.

124.   Ordinarily, Plaintiff Gutman is risk-averse. When he places bets, he specifically targets low-return bets with higher chances of yielding a positive outcome.

125.   Here, because PointsBet promised him that he would get his money back and that the bet itself was risk-free, regardless of the stated odds of winning, he specifically opted for a risky bet.

126.   As is most often the case with long-odds bets, Plaintiff Gutman lost.

127.   At that point, Plaintiff Gutman anticipated he would receive a refund via free bet credits, as the offer had stated.

128.   What it had *not* stated, however, is that the free bets could not be withdrawn or exchanged for cash.

129.   The offer additionally had not informed him that the free bets expired within a very short window, forcing him to place bets he otherwise would not have, or else lose the free bet vouchers altogether.

130.   The offer additionally had not informed him that if he won on the free bets, he would recover only the winnings associated with those free bets, and that PointsBet would not reimburse him for the difference in the overall loss resulting from his initial wager.

131.   Treading carefully now, in an effort to recoup as much as possible of his $500 loss, Plaintiff Gutman placed a number of low-risk, low-payout bets.

132.    Even if he had prevailed in all of his free bets, however, he would have been left with less than $500 in total.

133.    Plaintiff Gutman reached out to PointsBet's customer service to request a refund, but was refused.

134.    PointsBet's customer service referred him to its terms and conditions, wherein there is a passing reference to "Bonus Bets."

135.    In the original offer language, "Free Bets" was a capitalized term. In the terms and conditions, "Bonus Bets" is a separate capitalized term:



136.    Nothing in the terms and conditions, in other words, explained that Bonus Bets and Free Bets were the same thing, nor that Bonus Bets would expire.

137.    Nevertheless, PointsBet insisted that it was Plaintiff Gutman who should bear the cost for its own misleading advertising and its imprecise Terms and Conditions.

138.    Plaintiff Gutman subsequently filed a complaint with the New York Gaming Commission.

139.    Following that complaint, he received a follow-up call from PointsBet, on or around June 21, 2022.

140.    Notably, this was after PointsBet had adjusted the offer language on this website and was facing another consumer class action lawsuit for its misrepresentations.

141.   Nevertheless, PointsBet continued to insist that Plaintiff Gutman bore responsibility for placing his "risk-free" bet.

142.   To this day, PointsBet has declined to take responsibility for its own misleading advertising, necessitating this action.

## CLASS ACTION ALLEGATIONS

143.   Plaintiff brings this class action pursuant to Federal Rules of Civil Procedure ("Rule(s)") 23(a) and 23(b)(3) and seeks certification of the class as identified below.

### Definition of Proposed Class

144.   Plaintiff brings this class action on behalf of the following class (the "Class"):

**All persons who created an account with PointsBet, whether via its website, mobile app, or third-party platform, who signed up for PointsBet accounts and placed bets on its platform using codes from promotional offers. Excluded from the Class are Defendants and their officers and directors at all relevant times, members of Defendants' immediate families and their legal representatives, heirs, successors, and assigns, and any entity in which the Defendants have or had a controlling interest.**

145.   Within this Class, Plaintiff Eric Gutman also brings this action on behalf of himself and on behalf of the following subclass (the "New York Subclass"): **All persons in New York, within the applicable statute of limitations, who signed up for PointsBet accounts and placed bets on its platform using codes from promotional offers**.

146.   Plaintiff reserves the right to amend or modify the Class in connection with a Motion for Class Certification or as the result of discovery.

147.   Certification of Plaintiff's claims for class-wide treatment is appropriate because

Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as individual Class Members would use to prove those elements in individual actions alleging the same claims.

Size of the Proposed Class

148.    Plaintiff does not currently know the exact size of the proposed Class. However, Plaintiff is aware that the Class is so numerous that joinder of the individual Members of the proposed Class is impracticable. On information and belief, the Class includes at least thousands of people throughout the United States. The number and identities of Class Members are unknown to Plaintiff, but can be ascertained through discovery, including into PointsBet account records, electronic messages, and customer service files, as well as through published notice.

Adequacy of Representation by the Class Representative

149.    Plaintiff's claims are typical of the Class, and Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests adverse to the interests of the Class and has retained counsel with experience in the prosecution of class actions and complex litigation, including consumer litigation, and who will vigorously prosecute this action.

Common Questions of Law and Fact

150.    Questions of law or fact common to the Class exist as to Plaintiff and all Class Members, and these common questions predominate over any questions affecting only individual Class Members. Among the common questions of law and fact are the following:

      a.    Whether PointsBet's advertising and promotional offers promised consumers their bets would be "risk free";

      b.    Whether PointsBet offered to refund consumers for losses associated with the "risk-free" bets it induced them to place;

26

c.   Whether PointsBet adequately disclosed to consumers the difference between free bet credits and ordinary bets;

d.   Whether PointsBet adequately disclosed to consumers that its promotional vouchers would not be redeemable for cash;

e.   Whether PointsBet adequately disclosed to consumers that its promotional vouchers would expire within 30 days;

f.   Whether PointsBet adequately disclosed to consumers that they would be required to place a second bet in order to receive the "refund" it had promised;

g.   Whether PointsBet's promotions and advertising were false and materially misleading;

h.   Whether PointsBet acted with knowledge or reckless disregard for the misleading nature of its advertisements;

i.   When PointsBet first received notice that its promotions and advertisements were misleading consumers;

j.   Whether PointsBet intended for consumers to rely on its misleading statements;

k.   Whether consumers reasonably relied on PointsBet's misleading statements and promotions;

l.   Whether PointsBet's issuance of limited expiration free bet credits satisfied its obligations to consumers under the terms of its offer to them;

m.  PointsBet's compliance (or lack thereof) with regulatory disclosure requirements under the FTCA and CARD Act;

n.   Whether Defendants were unjustly enriched;

o.   Whether Defendants owed Plaintiff and the Class a duty, and whether they

breached the same; and

p.   The amount of damages sustained by Plaintiff and the Class.

<u>Typicality of Claims of the Class Representatives</u>

151.    Plaintiff does not anticipate any difficulties in the management of this action as a class action. The Class is ascertainable, and there is a well-defined community of interests in the questions of law and fact alleged because the rights of each Class Member were violated in similar fashion based on Defendants' misconduct. Notice can be provided through records and publication, the cost of which is properly imposed upon Defendants.

152.    Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff and the Class Members. Common questions of law and fact predominate over any individual questions that may arise.

153.    The injuries sustained by Plaintiff and the Class Members flow, in each instance, from a common nucleus of operative facts, *i.e.*, Defendants' misleading and deceptive advertising, which lured Plaintiff and the Class Members into creating accounts and placing bets on its platform in reliance on promises of "risk-free" betting and "refunds" when, in actuality, they bore a significant risk of losing the entire amount of their wagers.

154.    Plaintiff's claims are typical of the claims of the Class they seek to represent. Defendants' uniform obligations relating to the advertising of its sports betting services apply equally to Plaintiff and all Class Members. Moreover, the defenses, if any, that will be asserted against Plaintiff's claims are typical of the defenses, if any, that will be asserted against all Class Members' claims (*e.g.,* that the promotions were not misleading, or that a reasonable person would have understood there would still be risks incurred when placing their "risk-free" bets).

//

28

Nature of the Notice to the Proposed Class

155.    Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. The vast majority of the names and contact information of the Class Members is likely available from Defendants or their partners.

156.    The class definition is carefully drawn such that the Class Members can easily be identified and notified using standard class notification methods, including analysis of Defendants' sales records, mailing, electronic notification, and other methods.

157.    To the extent possible, Plaintiff contemplates providing notice(s) to the Class, as approved by the Court, through the mail or as otherwise directed. In the alternative or in connection with mailed notices, Plaintiff may utilize paid advertising notices online or in media likely to draw the attention of Class Members *e.g.*, specialty magazines. The notice(s) shall, among other things, advise the Class that they shall be entitled to "opt out" of the Class if they so request by a date specified within the notice and that any judgment, whether favorable or not, entered in this case will bind all members except those who affirmatively exclude themselves by timely opting out.

Additional Matters Pertinent to the Findings as

Provided by Fed. R. Civ. P. 23(b)(3)

158.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, and individual joinder of all Class Members is impracticable, if not impossible, because the massive number of Class Members are scattered throughout the world. Moreover, the cost to the court system of such individualized litigation would be substantial. Individualized litigation would likewise present the potential for inconsistent or contradictory judgments and would result in significant delay and expense to all parties and courts hearing virtually identical lawsuits. By contrast, the conduct of this action as a class action would present

fewer management difficulties, conserve the resources of the parties and the courts, and protect the rights of each Class Member and maximize recovery to them.

159.    Given the amount in controversy for each individual Member of the Class, the relief sought in this case, that Defendants have acted on grounds generally applicable to the entirety of the Class, and the large size of the anticipated Class, the interest of each Class Member in controlling his or her own case is relatively low; there are relatively minimal expected difficulties likely to be encountered in managing a class action; Plaintiffs anticipate that relevant foreign courts will recognize a United States judgment in this case; Plaintiffs are not aware of other litigation by individual Class Members already in progress involving the same controversy; PointsBet specifically holds itself out to the public as offering services jointly on behalf of PointsBet USA and the PointsBet Subsidiaries, and there is a strong desirability of consolidating all claims in a single action before a single court in the United States.

## FIRST CLAIM FOR RELIEF

**Violation of Colorado Consumer Protection Act (Colo. Rev. Stat. §§6-1-101, *et seq*.)**

**(By Eric Gutman, individually, and on behalf of the Class)**

160.    Plaintiff incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

161.    Upon information and belief, all of PointsBet's deceptive marketing as described herein was conducted by PointsBet from within the state of Colorado.

162.    Each PointsBet entity is a "person" as defined by Colo. Rev. Stat. 601-102(6).

163.    Plaintiff Gutman, as well as the Class and general public, are actual or potential consumers of the products and services offered by PointsBet, or are successors in interest to actual consumers.

164.    A company doing business in Colorado violates the Colorado Consumer Protection Act when it does any of the following:

a.   Advertises goods, services, or property with intent not to sell them as advertised;

b.   Employs "bait and switch" advertising, which is advertising accompanied by an effort to sell goods, services, or property other than those advertised or on terms other than those advertised, when the offer requires tie-in sales or other undisclosed conditions to be met prior to selling the advertised goods, property, or services;

c.   Fails to disclose material information concerning goods, services, or property, which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction; and

d.   Fails, in connection with any solicitation, oral or written, to clearly and prominently disclose immediately adjacent to or after the description of any item or prize to be received by any person the actual retail value of each item or prize to be awarded.

165.    PointsBet has, for a period of months, advertised to consumers its "risk-free" offers, including "refunds," despite having no intention of honoring this advertising.

166.    PointsBet's advertising specifically violates Colorado law, as described above, in that it fails to provide legally required disclosures to consumers which are essential to prevent consumer confusion.

167.    Users who placed bets did not receive refunds.

168.    Users who placed bets instead received credits, the value of which was not disclosed.

169.    The bets themselves were not "risk-free."

170.    Users' ability to recover any portion of their lost funds was contingent upon their use of and success from placing "free bets," a condition that was not disclosed at the time of the advertisement or when consumers entered into the transaction.

171.    PointsBet failed to disclose the full terms of its promotional program, in an effort to entice consumers to sign up on its platform who would not have if they had realized that the "risk-free" offer would not allow them to obtain refunds.

172.    Information regarding the retail value of "free bet credits" was not disclosed, nor was it apparent that these would have no cash value and would expire within 30 days.

173.    PointsBet's representations and omissions were material because they were likely to deceive reasonable consumers about the nature of PointsBet's "risk-free" offer, inducing them into spending money and placing bets on its platform.

174.    PointsBet intended to mislead Plaintiff Gutman and the other Class members and induce them to rely on Defendants' misrepresentations and omissions.

175.    Had Plaintiffs and the other Class members known the truth about PointsBet's offer terms, they would not have created accounts with PointsBet or placed bets on its platform.

176.    PointsBet engaged in the above unfair and deceptive acts or practices in the course of its business.

177.    PointsBet engaged in the above unfair and deceptive acts or practices with malice and/or willfullness.

178.    As a direct and proximate result of PointsBet's unfair and deceptive practices,

Plaintiff Gutman and the Class suffered injuries in the form of monetary losses when they failed to receive refunds for bets they placed in reliance on PointsBet's promotional offerings.

179.   The above unfair and deceptive practices and acts by PointsBet were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff Gutman and the Class that they could not reasonably avoid, even by attempting to specifically review PointsBet's referenced (but unavailable) terms and conditions as associated with its promotions.

180.   PointsBet knew or should have known that its misrepresentations and omissions would deceive Plaintiff and the Class. PointsBet's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff Gutman and the Class.

181.   Plaintiff Gutman and the Class seek relief under Colorado's Consumer Protection Act, including (but not limited to) compensatory damages, statutory damages, restitution, penalties, injunctive relief, treble damages, and/or attorney's fees and costs.

## SECOND CLAIM FOR RELIEF

### Negligent Misrepresentation

### (By Eric Gutman, individually, and on behalf of the Class)

182.   Plaintiff incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

183.   PointsBet advertised to consumers that the bets they placed in accordance with its promotional offer would be "risk free" and would provide them with a "refund."

184.   These representations were false.

185.   These representations were material, in that a reasonable viewer would rely on them when deciding to proceed with creating a PointsBet account and placing a bet in reliance on the

promotion.

186.    PointsBet owed a duty not to mislead its customers and the public at large with its advertisements.

187.    PointsBet breached this duty by telling consumers its promotion would allow them to place "risk free" bets that would afford them "refunds" when, in actuality, that was untrue.

188.    At all relevant times when such misrepresentations were made, PointsBet knew or was negligent in not knowing that these promotions were not "risk free" and that consumers would not receive "refunds." PointsBet had no reasonable grounds for believing its misrepresentations were not false or misleading.

189.    PointsBet intended that Plaintiff and other consumers rely on these representations, as evidenced by their use of prominent promotional advertising with almost no reference to additional terms and conditions, their failure to properly link promotional terms and conditions, and their failure to explain in detail in their general terms and conditions how free bet credits would work.

190.    Plaintiff Gutman and the Class relied on these misleading misrepresentations in creating PointsBet accounts and placing bets on the PointsBet platform, and had the correct facts been known, they would not have created accounts or placed bets on the platform.

191.    Thus, as a direct and proximate result of PointsBet's negligent misrepresentations, Plaintiff Gutman and the Class were damaged when they failed to win their "risk-free" bets but nevertheless lost some or all of the money they initially used to place the "risk-free" bets in the first place.

192.    Plaintiff Gutman and the Class seek relief for their injuries in an amount to be proven at trial, including (but not limited to) for compensatory damages and costs.

**THIRD CLAIM FOR RELIEF**

**Intentional Misrepresentation**

**(By Eric Gutman, individually, and on behalf of the Class)**

193.    Plaintiff incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

194.    Plaintiff brings this claim individually and on behalf of the members of the Class, in the alternative.

195.    PointsBet advertised its sign-up offers in a manner indicating that bets placed in reliance thereon would be "risk free" and that users would receive a "refund." However, the promotions do indeed carry a risk of loss and users receive only non-transferable vouchers with no cash value that may never allow them to recoup their initial losses. Therefore, PointsBet has made misrepresentations as to the promotional offers.

196.    PointsBet's misrepresentations regarding these promotional offers are material to the reasonable consumer because they relate to the characteristics, nature, and value of the services provided, as well as of the advertised offer. A reasonable consumer would attach importance to such representations and would be induced to act thereon in making the decision to place bets on the PointsBet platform in reliance on the same.

197.    At all relevant times when such misrepresentations were made, PointsBet knew that the representations were misleading, or has acted recklessly in making the representations, without regard to the truth.

198.    PointsBet intends that Plaintiff and other consumers rely on these representations, as evidenced by the following:

        a.   The graphical design of its offers, which loudly proclaim the offers to be "risk

free," often without any asterisks or adjacent disclosures to indicate that any other terms and conditions apply;

b. Its use of "T&C" to denote "terms and conditions";

c. The fact that its general terms and conditions do not include an explanation of how free bets work;

d. The miniscule, low-contrast font to draw consumer attention away from any suggestion that additional terms apply;

e. The complete inaccessibility of the promotional terms and conditions to consumers prior to June 2022;

f. The use of "risk-free" language to describe a scenario where consumers may, indeed, lose their money entirely;

g. The misuse of "refund" to describe the provision of a valueless free bet credit with no cash value;

h. The failure to make mandatory disclosures required under Colorado law regarding these promotional credits;

i. The failure to disclose the expiration date for these promotional credits; and

j. PointsBet's own statements regarding the aggressively competitive market for sports betting companies and its need to deploy strategies to prevent consumers from migrating to a competitor.

199.    Plaintiff and the Class reasonably and justifiably relied on PointsBet's intentional misrepresentations when placing bets via its promotions. Among other things, this reliance was justified because consumers were entitled to understand that these advertisements would comply with applicable law.

200.     Had they known the truth, Plaintiff and the Class would not have placed bets in the first place, particularly bets that otherwise would bear a high risk of loss.

201.     Therefore, as a direct and proximate result of PointsBet's intentional misrepresentations, Plaintiff and members of the Class have suffered economic losses and other general and specific damages, including but not limited to the amounts paid to PointsBet for placing bets in the first place, as well as losses associated with any subsequent bets placed in an effort to recover their original funds.

**FOURTH CLAIM FOR RELIEF**

**Fraudulent Inducement**

**(By Eric Gutman, individually, and on behalf of the Class)**

202.     Plaintiff incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

203.     Plaintiff brings this claim individually and on behalf of the members of the Class, in the alternative.

204.     PointsBet misrepresented multiple material facts about its promotional offers, as described throughout this Complaint. Specifically, it misrepresented the "risk-free" nature of bets placed in reliance on its promotions, misrepresented the availability of "refunds," misrepresented the nature of "free bet credits," misrepresented the fact that consumers could, in fact, lose the entire amount wagered in reliance on the promotion, and failed to make legally required disclosures about the nature of the promotion, the expiration of the free bet credits, the fact that free bet credits had no cash value and could not be transferred or redeemed for cash, and the fact that consumers would be required to place a second round of bets in order to attempt to recover the amounts lost in their initial wagers.

205.    Plaintiff and the Class relied on PointsBet's representations and omissions in creating accounts on PointsBet and in placing wagers on the platform in reliance on the promotion.

206.    Plaintiff and the Class were justified in so relying, because they were entitled to believe that PointsBet would not violate the law by failing to make requisite disclosures to its consumers, or to misrepresent the nature of its advertised offers.

207.    At the time PointsBet made these misrepresentations to consumers, it knew them to be false.

208.    At the time PointsBet made these misrepresentations to consumers, it had no present intent to fulfil the terms of the promotional offer as advertised to consumers.

209.    As a result of PointsBet's misrepresentations, Plaintiff and the Class sustained monetary damages amounting to the total losses each sustained in reliance on placing "risk free" bets.

210.    Absent these misrepresentations, Plaintiff and the Class would not have created accounts or placed bets on the PointsBet platform.

211.    Therefore, as a direct and proximate result of PointsBet's intentional misrepresentations, Plaintiff and members of the Class have suffered economic losses and other general and specific damages, including, but not limited to, the amounts paid to PointsBet for placing bets in the first place, as well as losses associated with any subsequent bets placed in an effort to recover their original funds.

## FIFTH CLAIM FOR RELIEF

### Quasi Contract/Unjust Enrichment/Restitution

### (By Eric Gutman, individually, and on behalf of the Class)

212.    Plaintiff incorporates by reference all allegations in this Complaint and restates

them as if fully set forth herein.

213.   Plaintiff brings this claim individually and on behalf of the members of the Class.

214.   As alleged herein, PointsBet has intentionally and/or recklessly made misleading misrepresentations to Plaintiff and the Class to induce them to create accounts and place bets on its platform.

215.   Plaintiff and the Class have reasonably relied on these misleading representations and have not received the benefits promised by PointsBet.

216.   Plaintiff and the Class therefore have been induced by PointsBet's misleading and deceptive representations about the promotional offers, and paid more money to PointsBet to place bets than they otherwise would and/or should have paid.

217.   Plaintiff and the Class have conferred a benefit upon PointsBet as PointsBet has retained monies paid to them by Plaintiff and the Class.

218.   The money PointsBet received was obtained under circumstances that were at the expense of Plaintiff and the members of the Class; *i.e.*, Plaintiff and the members of the Class did not receive the full value of the benefit conferred upon PointsBet.

219.   Therefore, it is inequitable and unjust for PointsBet to retain the profit, benefit, or compensation conferred upon it without paying Plaintiff and the Class back for the difference of the full value of the benefits compared to the value actually received.

220.   As a direct and proximate result of PointsBet's unjust enrichment, Plaintiff and members of the Class are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by PointsBet from its deceptive, misleading, and unlawful conduct as alleged herein.

//

## SIXTH CLAIM FOR RELIEF

### Violation of N.Y. Gen. Bus. Law §§349 & 350

### (By Eric Gutman, individually, and on behalf of the New York Subclass)

221.    Plaintiff incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

222.    Plaintiff Eric Gutman hereby brings this Claim, under New York General Business Law §§349 & 350, against Defendants, on behalf of himself and the New York Subclass.

223.    Defendants' conduct was misleading, deceptive, unlawful, fraudulent, and unfair in that Defendants materially misrepresented the nature of their promotions.

224.    Defendants caused to be disseminated through New York state and elsewhere, through advertising, marketing, and other publications, statements that were untrue and misleading, and which it knew were untrue and misleading.

225.    Defendants' misrepresentations were material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers were and continue to be exposed to Defendants' material misrepresentations.

226.    Additionally, Defendants' conduct was unlawful.

227.    New York law requires that all gambling advertisements "comply with Racing, Pari-Mutuel Wagering and Breeding Law [PML] section 1363 and with advertising guidelines issued by the National Council on Problem Gambling." 9 N.Y.C.R.R. 5325.6.

228.    Plaintiff and the New York Subclass have been injured by Defendants' deceptive acts or practices.

229.    Plaintiff and the New York Subclass have no adequate remedy at law.

230.    Defendants' conduct has caused and is causing immediate and irreparable injury to

Plaintiff and the New York Subclass and will continue to both damage Plaintiff and the New York Subclass and deceive the public unless enjoined by this Court.

231.     Any person who has been injured by reason of any violation of NY GBL §349 may bring an action in his or her own name to enjoin such unlawful acts or practices, an action to recover their actual damages or $50, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not exceeding three times the actual damages, in addition to $1,000 per violation, if the court finds that a defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

232.     Pursuant to NY GBL §350(e) Plaintiff and the New York Subclass seek monetary damages (including actual damages, or $500, whichever is greater, and minimum, punitive, or treble and/or statutory damages pursuant to NY GBL §350(a1)), injunctive relief, restitution, and disgorgement of all monies obtained by means of Defendants' unlawful conduct, interest, and attorney's fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment as follows:

1. That the case be certified as a class action on behalf of the Class and New York Subclass as identified above, appoint Plaintiff as Class representative, and appoint his counsel as Class counsel;

2. A declaration that Defendants' actions, as described herein, violate the law as described herein;

3. An award of injunctive and other equitable relief as necessary to protect the interests of Plaintiff and the Class, including an order prohibiting Defendants from engaging in

the unlawful acts described above;

4. An award to Plaintiff and the proposed Class of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiff and the proposed Class as a result of their unlawful, unfair, and fraudulent business practices as described herein;

5. An award of all economic, monetary, actual, consequential, compensatory, and treble damages caused by Defendants' conduct;

6. An award of punitive damages;

7. An award to of reasonable expenses of attorney's fees;

8. An award of pre and post-judgment interest, to the extent allowable; and

9. For such further relief that the Court may deem just and proper.


Respectfully Submitted,

DATED: August 19, 2022                    **KRONENBERGER ROSENFELD, LLP**

                                          By: _____ s/Karl S. Kronenberger _____

                                          **Karl S. Kronenberger**
                                          150 Post Street, Suite 520
                                          San Francisco, CA 94108
                                          Telephone: (415) 955-1155
                                          Facsimile: (415) 955-1158
                                          E-mail: karl@kr.law

                                          Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial of this action by jury.


Respectfully Submitted,

DATED: August 19, 2022                    **KRONENBERGER ROSENFELD, LLP**

                                          By: _____s/Karl S. Kronenberger_____

                                          **Karl S. Kronenberger**
                                          150 Post Street, Suite 520
                                          San Francisco, CA 94108
                                          Telephone: (415) 955-1155
                                          Facsimile: (415) 955-1158
                                          E-mail: karl@kr.law

                                          Attorneys for Plaintiff