## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-2137-SKC

ERIC GUTMAN, individually and on behalf of all others similarly situated, RYAN BOYLE, individually and on behalf of all others similarly situated, KEITH NATHAN, individually and on behalf of all others similarly situated, ERIC SPIVACK, individually and on behalf of all others similarly situated, KYLE JOHNSON, individually and on behalf of all others similarly situated, and,

         Plaintiffs,

   v.

POINTSBET USA INC., a Delaware corporation; POINTSBET NEW YORK LLC, a New York limited liability company; POINTSBET INDIANA LLC, a Delaware limited liability company; POINTSBET IOWA LLC, a Delaware limited liability company; POINTSBET MICHIGAN LLC, a Delaware limited liability company; POINTSBET NEW JERSEY LLC, a New Jersey limited liability company; POINTSBET COLORADO LLC, a Delaware limited liability company; POINTSBET ILLINOIS LLC, a Delaware limited liability company; POINTSBET WEST VIRGINIA LLC, a Delaware limited liability company; POINTSBET VIRGINIA LLC, a Delaware limited liability company; and POINTSBET PENNSYLVANIA LLC, a Delaware limited liability company,

         Defendants.

## FIRST AMENDED COMPLAINT

Plaintiffs Eric Gutman ("Gutman"), Ryan Boyle ("Boyle"), Keith Nathan ("Nathan"), Kyle Johnson ("Johnson"), and Eric Spivack ("Spivack") (collectively "Plaintiffs"), by and through their undersigned counsel, bring this Complaint against Defendants PointsBet USA Inc., PointsBet New York LLC, PointsBet Indiana LLC, PointsBet Iowa LLC, PointsBet Michigan LLC, PointsBet New Jersey LLC, PointsBet Colorado LLC, PointsBet Illinois LLC, PointsBet West Virginia LLC, PointsBet Virginia LLC, and PointsBet Pennsylvania LLC (collectively, "Defendants") and states and alleges as follows:

## INTRODUCTION

1. This is a case about Defendants' systematic campaign to mislead consumers across the United States in an effort to acquire market share in the competitive world of sports betting.

2. In frenetic marketing attempts to acquire new consumers in a new and highly competitive market, Defendants engaged in a deliberate campaign to entice consumers to Defendants' platform with empty promises of "risk-free" promotions and "refunds" if the users' bets failed to secure winnings.

3. Instead, as users would learn if they lost their "risk-free" bets, Defendants offered limited-duration vouchers that could only be used to place a second round of bets. These vouchers could not be exchanged for cash, could not be withdrawn, and expired after only 30 days.

4. Only if users won their second round of bets at disfavored odds could they hope to recoup losses associated with their initial bets—making this offer anything but "risk-free."

5. Plaintiffs brings this suit against all Defendants for violations of the Colorado Consumer Protection Act (Colo. Rev. Stat. §§6-1-101, *et seq.*), N.Y. Gen. Bus. Law §§349 & 350, the Illinois Consumer Fraud and Deceptive Trade Practices Act (815 Ill. Comp. Stat. §§505/1, *et seq.* and §§510/1, *et seq.*), the Iowa Consumer Fraud Act (Iowa Code §714.16, *et seq.*), and the

Virginia Consumer Protection Act (Va. Code Ann. §59.1-196, *et seq.*).

6.    Additionally, and as set forth in greater detail below, Plaintiffs bring claims against all Defendants for negligent misrepresentation, intentional misrepresentation, fraudulent inducement, and quasi contract/unjust enrichment/restitution, and negligence under the common law of each Plaintiff's state where applicable.

## PARTIES

7.    Plaintiff Eric Gutman is, and at all times relevant to this action was, a resident and citizen of New York, who was enticed into spending money on Defendants' sports betting platform by Defendants' advertisements and promotional material.

8.    Plaintiff Ryan Boyle is, and at all times relevant to this action was, a resident and citizen of Colorado, who was enticed into spending money on Defendants' sports betting platform by Defendants' advertisements and promotional material.

9.    Plaintiff Keith Nathan is, and at all times relevant to this action was, a resident and citizen of Illinois, who was enticed into spending money on Defendants' sports betting platform by Defendants' advertisements and promotional material.

10.    Plaintiff Kyle Johnson is, and at all times relevant to this action was, a resident and citizen of Iowa, who was enticed into spending money on Defendants' sports betting platform by Defendants' advertisements and promotional material.

11.    Plaintiff Eric Spivack is, and at all times relevant to this action was, a resident and citizen of Virginia, who was enticed into spending money on Defendants' sports betting platform by Defendants' advertisements and promotional material.

12.    Defendant PointsBet USA Inc. ("PointsBet USA") is a Delaware corporation with its headquarters located in Denver, Colorado.

13.     Defendant PointsBet New York LLC ("PointsBet New York") is a New York limited liability company registered to do business in New York.

14.     Defendant PointsBet Indiana LLC ("PointsBet Indiana") is a Delaware limited liability company registered to do business in Indiana.

15.     Defendant PointsBet Iowa LLC ("PointsBet Iowa") is a Delaware limited liability company registered to do business in Iowa.

16.     Defendant PointsBet Michigan LLC ("PointsBet Michigan") is a Delaware limited liability company registered to do business in Michigan.

17.     Defendant PointsBet New Jersey LLC ("PointsBet New Jersey") is a New Jersey limited liability company organized in New Jersey.

18.     Defendant PointsBet Colorado LLC ("PointsBet Colorado") is a Delaware limited liability company registered to do business in Colorado.

19.     Defendant PointsBet Illinois LLC ("PointsBet Illinois") is a Delaware limited liability company registered to do business in Illinois.

20.     Defendant PointsBet West Virginia LLC ("PointsBet West Virginia") is a Delaware limited liability company registered to do business in West Virginia.

21.     Defendant PointsBet Virginia LLC ("PointsBet Virginia") is a Delaware limited liability company registered to do business in Virginia.

22.     Defendant PointsBet Pennsylvania LLC ("PointsBet Pennsylvania") is a Delaware limited liability company registered to do business in Pennsylvania.

23.     Defendants PointsBet New York, PointsBet Indiana, PointsBet Iowa, PointsBet Michigan, PointsBet New Jersey, PointsBet Colorado, PointsBet Illinois, PointsBet West Virginia, PointsBet Virginia, and PointsBet Pennsylvania (collectively, the "PointsBet Subsidiaries") are all

wholly owned subsidiaries of Defendant PointsBet USA.

24.      Upon information and belief, the PointsBet Subsidiaries do not maintain separate corporate identities from one another or from PointsBet USA.

25.      PointsBet USA and the PointsBet Subsidiaries (collectively, "PointsBet") collectively provide the sports betting services that are the subject of this suit.[1]

26.      Upon information and belief, while each of the PointsBet Subsidiaries maintains an address in their respective states of registration, they are all wholly-controlled by PointsBet USA and operated from the PointsBet USA headquarters in Denver. Thus, their principal place of business is, in fact, located in Denver, Colorado.

27.      Upon information and belief, the marketing, advertising, and promotional materials that are the subject of this suit were designed, prepared, and disseminated by PointsBet USA from its Colorado headquarters, where its marketing team works.

28.      Upon information and belief, these promotions are collaboratively designed by PointsBet USA, in concert with the PointsBet Subsidiaries.

29.      Upon information and belief, PointsBet USA wholly owns and controls each of the PointsBet Subsidiaries.

30.      Upon information and belief, PointsBet USA and the PointsBet Subsidiaries have common directors and officers, and these directors and officers act in the benefit of PointsBet USA, and not in the interest of the PointsBet Subsidiaries.

31.      Upon information and belief, PointsBet USA caused the PointsBet Subsidiaries to

---

[1] *See, e.g.*, Terms & Conditions, PointsBet (Nov. 22, 2021), available at https://ny.pointsbet.com/terms-and-conditions ("'PointsBet' or 'Pointsbet.com' is the business name of PointsBet USA Inc., its affiliated entities, and its related mobile app ('PointsBet'). All references to 'we', 'us' and 'our' in these general Terms of Use and Conditions ('Rules' 'Terms' or 'Terms and Conditions') are a reference to PointsBet.").

be organized.

32.     Upon information and belief, the PointsBet Subsidiaries have grossly inadequate capital. Their expenses are paid for by PointsBet USA, and their profits are funneled to PointsBet USA.

33.     Upon information and belief, the PointsBet Subsidiaries have no independent business except with PointsBet USA.

34.     Upon information and belief, the distinctions between the PointsBet Subsidiaries and PointsBet USA are regularly confused and disregarded.

35.     Upon information and belief, PointsBet USA and the PointsBet Subsidiaries were, at all times relevant to this action, the instrumentalities and alter egos of one another, and were direct participants in the actions and inactions described herein.

## JURISDICTION AND VENUE

36.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d) because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and this is a class action in which at least one member of the  class is a citizen of a foreign state, and Defendants are citizens of a State in the United States. The proposed class consists of more than one hundred persons. Further, the claims can be tried jointly because they involve common questions of law and fact that predominate over the individual issues, as outlined below.

37.     This Court has both specific and general personal jurisdiction over Defendants because Defendants do business in this District on a systematic and ongoing basis; hold or own real and personal property within this District; derive substantial revenue from their contacts within this District; and are headquartered or maintain offices within this District. Moreover, on

information and belief, Defendants created and published the deceptive offer from within this District.

38.     Venue is appropriate in this District pursuant to 28 U.S.C. §1391 because Defendants reside in this District, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this District through offices maintained by Defendants in this district.

## FACTUAL ALLEGATIONS

39.     PointsBet is a global online gaming operator that runs sports betting operations in Colorado, Illinois, Indiana, Iowa, Michigan, New Jersey, New York, Pennsylvania, West Virginia, and Virginia.

40.     Its partners include CBS Sports, the National Football League, the National Basketball Association, Major League Baseball, and the National Hockey League. Indeed, in 2021 it was among only four sports betting companies selected to partner with the National Football League.

41.     In 2020, PointsBet announced a five-year partnership with NBC Universal to make it the official sports betting partner of NBC Sports, which resulted in NBC Sports acquiring a 4.9% equity stake in PointsBet.

42.     From 2019 to 2021, PointsBet enjoyed meteoric growth in the United States. Its total handle catapulted by nearly 458.4 percent in the year 2021 alone, while its gross and net win each increased by 481 percent.[2]

43.     In fact, PointsBet itself claims to be the fastest growing sports betting company in the United States.

_____

[2] https://www.casino.org/news/pointsbet-share-sale-will-fund-ambitious-us-expansion-plans/

44.     During this same period, however, PointsBet found itself facing increased competition in its highly lucrative U.S. markets. In the third quarter of 2021, its share of the total bets placed began to see a significant overall decline.[3]

45.     PointsBet blamed this downturn on the "highly competitive" promotional environment in the sports betting world, but promised it was "not going to get caught up in an arms race on marketing."[4]

46.     PointsBet later reiterated this point, with its CEO Sam Swannell noting, "In a market where operators were giving away $3,000 free bets, that's going to be very attractive to the average person, and that might be where they go first. But once that's no longer available, consumers ultimately end up at the product that gives them the best service."[5]

47.     In keeping with these ideals, PointsBet expended a mere $21 million on marketing efforts during the third quarter of 2021.[6]

48.     But all of that changed when the company saw it was losing market share.

49.     In the first half of 2022, PointsBet expended $78.2 million on marketing expenses.[7]

50.     It was not enough, however, to merely entice customers. In a war to draw consumer attention, PointsBet needed a way to make them stay.

51.     As PointsBet's Chief Strategy Officer, Eric Foote, recently lamented, "The more aggressive you get with those offers – customers are getting smarter, they're more intelligent, they're shopping around more – what's the churn rate, how do you retain that customer after giving

---

[3] https://www.legalsportsreport.com/58597/pointsbet-earnings-call-q1-2022/
[4] *Id.*
[5] https://www.legalsportsreport.com/65487/pointsbet-earnings-call-february-2022/
[6] https://www.legalsportsreport.com/58597/pointsbet-earnings-call-q1-2022/
[7] https://investors.pointsbet.com.au/wp-content/uploads/2022/02/1.-HY22-Appeix-4D-and-HY-Report.pdf

such a large bonus or deposit match? You have to retain them."[8]

52.     PointsBet therefore had a problem: it needed to not only attract customers, but find a way to retain them on its platform so that they would not simply take advantage of its promotions and then leave to a competitor. It needed a plan to keep users tied to its platform.

### PointsBet's Advertising Blitz

53.     "Since online sports gambling became legal in New York last month, New Yorkers have been bombarded with misleading ads on social media and streaming sites that claim 'risk-free' bets and '$1,000 welcome offers,' which sound like free money, but often come with strings attached without consumers' awareness. . . . Online sports betting companies that fumble their advertising to mislead New Yorkers can expect to hear from my office." – New York Attorney General Letitia James, February 10, 2022.[9]

54.     When PointsBet launched in New York in January of 2022, it ran aggressive advertising campaigns that included TV, radio, and online promotions all offering sign-up offers of $500 to $2,000.

55.     To address its problem of needing to attract customers as well as retain them, and reclaim its market share, PointsBet embarked on an aggressive campaign to lure in new customers. Unbeknownst to those customers, however, its promised promotional offer was specifically designed to force them to stay on its platform and place additional bets, or else forfeit the promotion entirely.

---

[8] Kris Johnson. *How Long Will Sports Betting Sign-Up Bonuses Last?*, Gaming Today (July 25, 2022), *available at* https://www.gamingtoday.com/news/sports-betting-sign-up-bonuses/.

[9] CONSUMER ALERT: Attorney General James Warns New Yorkers of Deceptive Online Sports Betting Companies Ahead of Super Bowl, NYS Attorney General (Feb. 10, 2022), *available at* https://ag.ny.gov/press-release/2022/consumer-alert-attorney-general-james-warns-new-yorkers-deceptive-online-sports.

56.     Worse, those who did remain did not receive the benefit they were specifically promised.

57.     PointsBet's marketing strategy was part of an intentional initiative to capitalize on the addictive nature of gambling, and the established susceptibility of online sports betters.

58.     The National Council for Problem Gambling ("NCPG") has raised concerns since 2018 about the particular susceptibility of online sports bettors. Among other things, its research has established that the rate of gambling problems among sports bettors, and particularly online sports bettors, are over twice those of gamblers in general.[10]

59.     Of particular note, the NCRB observed, "Aggressive promotions in all forms of marketing and advertising make it more difficult for sports bettors who are trying to curtail their gambling. Ads that emphasize 'free play,' tout the ease of placing a bet, and offer risk-free bonuses are particularly problematic."[11]

60.     In response to these and other risks, the NCPG established the Safer Sports Betting Initiative to specifically help reduce the risk of gambling problems created by aggressive advertising campaigns and other risks.

61.     Since 2012, the NCPG has also promulgated its Internet Responsible Gaming Standards. In the 2021 update to these standards, the NCPG included the following standard: "Advertising is not misleading about outcomes of gambling and does not misrepresent odds of winning/losing."[12]

62.     Speaking specifically about the use of "risk-free" language, Cait Huble, the

---

[10] https://www.ncpgambling.org/wp-content/uploads/2020/01/Sports-gambling_NCPGLitRvwExecSummary.pdf
[11] Id.
[12] https://158bvz3v7mohkq9oid5904e0-wpengine.netdna-ssl.com/wp-content/uploads/2022/01/NCPG-IRGS-May-2021.pdf

NCPG's director of communications, noted, "Overall, 'risk-free' has always been problematic language to us because it's not truly risk-free. From a messaging perspective, it was deceptive."[13]

63.     As a long-time member of the NCPG, PointsBet was well aware of this research and the NCPG's research on the effect of misleading advertisements at the higher risk demographic of online sports bettors.

64.     Nevertheless, PointsBet continued to advertise its promotional offers as "risk-free."

65.     In fact, in July of 2022, PointsBet joined with the NCPG in its Responsible Gaming Research Initiative—all while continuing to advertise "risk-free" bets on its platform and across various advertising campaigns.

66.     In a series of promotional advertisements, the PointsBet website, and more, PointsBet repeatedly invited users, like Plaintiffs, to take advantage of its "risk-free" promotional offers.

67.     On its homepage, it enticed users to take advantage of a "$2,000 risk free bet at signup" without any asterisks or reference to terms and conditions (indeed, the terms and conditions were not even accessible from this page):[14]

//

//

//

//

//

//

---

[13] https://sportshandle.com/fanduel-promotional-pivot-risk-free-no-sweat/
[14] https://pointsbet.com/



68.   On   its   Promotions   page,   PointsBet   prominently   displayed   this   offer:



69.   In nearly microscopic print, the offer disclosed merely that "T&C's apply."

70.   Nothing indicates that "T&C" means "Terms and Conditions," and they are not hyperlinked from this advertisement.

71.   Below this offer, PointsBet made a few additional disclosures:

> Get up to a $500 Refund (in Free Bets) if your 1st Fixed Odds Bet loses and up to a $1,500 Refund (in Free Bets) if your first PointsBetting Wager loses!. New Customers Only! Use Code - WELCOME - to take advantage!

72.   Nothing here indicates that the "refund" is, in fact, non-refundable.

//

//

//

//

73.     Notably, in or around June of 2022 (and in response to a lawsuit filed by another of its customers), PointsBet updated this fine print to read:



74.     Similarly, PointsBet's various social media promotions used to navigate users to pages such as this one:

//

//

//

//

//

75.     Only by hovering over the miniscule "click here for more info" language did individuals encounter this screen:



//

//

//

//

//

//

//

76.     However, attempting to click the link to the Terms and Conditions yielded the following result:



77.     The Terms and Conditions were not otherwise available on the offer screen, via link or otherwise.

78.     In other words, PointsBet repeatedly enticed consumers with promises of "Risk-Free" bets and offers of "refunds" for those who failed to place successful bets.

79.     These offers promised that even if consumers lost their bets, those bets would be free of any risk, because PointsBet would refund the amount of the bet.

80.     But that was not true.

81.     If a user who had signed up using one of these promotions placed an unsuccessful bet, that user would not receive the promised refund, but would instead receive credits for "free bets" in the amount lost, up to the advertised caps.

82.     Free bet credits, however, are subject to numerous restrictions.

83.     Free bet credits cannot be redeemed for cash.

84.     Free bet credits are non-transferable.

85.     Free bet credits expire in 30 days.

86.     There are also significant differences in payouts for bets placed using free bet credits, as opposed to ordinary bets.

87.     When a user places an ordinary bet, and wins, that user receives back the amount of money bet on the outcome, plus the payout for that user's winnings.

88.     In other words, a user who places a bet for $500 on a bet that pays out $300 will receive $800 if he wins: $500 as reimbursement for the amount wagered, plus $300 in winnings.

89.     However, if a user were to place the same $500 bet using PointsBet's free bet credits, and won, **that user would receive back only the $300 in winnings**.

90.     Consumers lured into creating PointsBet accounts and spending money on bets in reliance on PointsBet's promises began by placing ordinary bets, which were promised to be "risk free" because consumers would receive "refunds" if they lost these bets.

91.     Once they lost these ordinary bets, however, the only thing they received was a limited expiration voucher good for a free bet in the same amount of their initial investment.

92.     At that point, if they lost the second bet, they lost entirely the value of their initial bet. Even if they won, however, they received back only the winnings for the second bet and not

the amount wagered.

93.     Thus, in order to fully recuperate the amounts lost in their initial wager, users would need to win bets placed on disfavored outcomes (*i.e.*, where the odds of winning were less than 50%).[15] Otherwise, even if they won their second round of wagers, they would still have lost money overall. In the vast majority of cases, this resulted in a net loss to users who did not win on their first bet placed.

94.     Users did not receive refunds for these losses.

95.     Users who failed to place their free bet during the thirty-day period when the promotional voucher was valid also lost the entire value of their initial bet.

96.     Thus, despite its "risk free" and "refundable" assurances to the contrary, PointsBet's consumers still incur significant risk when they place bets on its platform, even when taking advantage of its promotional offers.

97.     At no point prior to placing their initial bets were users informed that their "refunds" would come in the form of non-redeemable vouchers.

98.     At no point prior to placing their initial bets were users informed that their "refunds" would be subject to a thirty-day expiration limit.

99.     At no point prior to placing their initial bets were users informed that they would be required to place a second round of bets in order to receive their promised refunds.

100.     At no point prior to placing their initial bets were users informed that there was a risk they would not recover the dollar value of their initial bets.

---

[15] For those unfamiliar with sports betting, a bet whose payout will match the amount wagered dollar for dollar is not a bet with a 50% chance of success. If it were, sports betting companies would never make a profit. Instead, the payout is set at a rate that reflects the company's share, or "take," on the bet. Thus, to obtain a dollar-for-dollar match, a user must place a bet with a substantially lower chance of success. As they say, the house always wins.

101.    These were all material omissions, in that they significantly altered the perceived value of the offer PointsBet advertised.

102.    Additionally, PointsBet repeatedly promised, across multiple platforms and advertising campaigns, that these initial bets would be "risk-free."

103.    In actuality, these initial bets carried a significant risk of total, or near total loss.

104.    PointsBet therefore affirmatively misled consumers with its misleading statements of fact.

105.    Additionally, Colorado law specifically prohibits sports betting companies from describing offerings like these as "risk free" in the first place: "All offers and bonuses must . . . [n]ot be described as risk free if the customer needs to incur any loss or risk their own money to use or withdraw winnings from the risk free bet." 1 CCR 207-2 Rule 9.4(d).

106.    Colorado law further requires that advertising materials "include any material terms and conditions for that offer or bonus and have those material terms in close proximity to the headline claim of the offer or bonus and in reasonably prominent size." 1 CCR 207-2 Rule 9.4(b).

107.    Colorado law also prohibits anything from being described as free if a customer "has to risk or lose their own money or has conditions attached to their own money," without accompanying disclosures. 1 CCR 207-2 Rule 9.4(c).

108.    Upon information and belief, since around the time when PointsBet began running these promotional offers, it has received countless consumer complaints regarding this promotion. Rather than refund consumers their money, PointsBet has doubled down—blaming its customers for the actual consumer confusion caused by its misleading advertisements. It tells them, "Unfortunately, all of this information was available to you when you signed up and you agreed to these T&Cs when you created your account."

109. It is worth noting that, in or around June of 2022 (only after it was sued by another of its customers), PointsBet significantly altered the design of its promotional pages, altering its representations regarding its offers:



//

//

//

//

//

//

//

//

//

//

//

110.    Clicking on the "Full Promotional Terms and Conditions" link now reveals the following:



111.    None of these disclosures were available to consumers prior to June of 2022. Since then, the disclosures still appear in a separate page via hyperlink, and not directly on the page itself, in violation of Colorado law.

112.    To this day, in fact, attempting to click on various "Terms and Conditions" links across the site often yields a broken link to a webpage that never loads: https://pointsbet.com/terms-and-conditions.

113.    Additionally, the "Terms and Conditions" available elsewhere on the website do

not include the specific terms of the promotional offerings, except by reference.

114.   If users are able to locate the Terms and Conditions, the document itself contains almost no information on the "risk free" promotions. In fact, the only reference to "risk-free" in the Terms and Conditions is this:

**4.10. OTHER PROMOTIONS**

1. From time to time, PointsBet will offer other promotions on individual sporting events. Current promotions available to you can be viewed in the "promotions" tab after logging in to your account. Terms and Conditions for each promotion can be found by clicking on the respective promotion on the promotions tab. Some commonly used promotion types include, but are not limited to: Fixed price money back promotions, early payout offers, enhanced prices, booster odds, good karma payouts, no juice spreadlines, risk free promotions, parlay refund money back promotions, points protection bonus, -105 spreadlines, and double winning promotions.

115.   And the only reference in the Terms and Conditions to "free bets" is this:

11. To avoid the abuse of promotions offered by us from time to time, Booster Features are not available in conjunction with promotions including, but not limited to, free bets, bets placed using non-withdrawable funds or any bets placed which would qualify customers to receive a free bet, bonus or promotion.

116.   In other words, prior to June of 2022, PointsBet was specifically enticing consumers with the promise of "risk-free" bets which were, in fact, not risk free at all, and made no disclosures *whatsoever* as to any promotion-specific terms, except to reference, in passing, that there were terms and conditions available for each relevant promotion.

117.   But, once again, until June of 2022, the links to PointsBet's promotional Terms and Conditions were broken.

118.   Even if the links had not been broken, the promotional Terms and Conditions were not conspicuous, were not clearly disclosed to consumers, and were vague and ambiguous as to their terms, such that a reasonable consumer would not have understood their "risk-free" bet was subject to loss.

119.    By way of contrast, PointsBet's competitors offer clear language regarding their offers' terms. Bets that are advertised as "risk free," even those that use a "free bet" system, allow players to cash out their free bets in lieu of placing them. Those that do not allow players to cash out of their free bets use different language that does not suggest to a user that their bet will be free of risk.

120.    PointsBet's decision to advertise "refunds" and "risk-free" betting was part of a deliberate bait-and-switch campaign designed to trap consumers into placing future bets.

121.    In adopting this strategy, PointsBet was specifically leveraging the knowledge that its consumer base was particularly susceptible to addictive gambling behaviors, and was therefore more likely to continue placing bets on its platform even after failing to receive the expected benefits of its promotions.

122.    In answer to its CSO's question, "[H]ow do you retain that customer after giving such a large bonus or deposit match?" PointsBet's answer is clear: trick them into staying.

**Plaintiff Eric Gutman**

123.    Plaintiff Eric Gutman is a resident of the state of New York.

124.    In March of 2022, in response to numerous advertisements he had seen as part of PointsBet's aggressive advertising campaign, he placed a "risk-free" bet in reliance on PointsBet's "WELCOME" promotion.

125.    This promotion, depicted above, promises users that they will receive up to $500 in refunds for their first bet placed, and up to $1,500 in refunds for their second bet placed, should the bets fail to result in winnings.

126.    The promotion also described itself as "risk-free."

127.    Plaintiff Gutman had taken advantages of similar offers on other platforms. Based

on his experience with other sports betting companies in the industry, and on PointsBet's own representations, he understood that he would receive a refund in the event that the placed bet failed to secure the earnings he sought.

128.    In reliance on these representations, Plaintiff Gutman placed his first $500 bet— one with deliberately long odds and a low chance of success.

129.    Ordinarily, Plaintiff Gutman is risk-averse. When he places bets, he specifically targets low-return bets with higher chances of yielding a positive outcome.

130.    Here, because PointsBet promised him that he would get his money back and that the bet itself was risk-free, regardless of the stated odds of winning, he specifically opted for a risky bet.

131.    As is most often the case with long-odds bets, Plaintiff Gutman lost.

132.    At that point, Plaintiff Gutman anticipated he would receive a refund via free bet credits, as the offer had stated.

133.    What it had *not* stated, however, is that the free bets could not be withdrawn or exchanged for cash.

134.    The offer additionally had not informed him that the free bets expired within a very short window, forcing him to place bets he otherwise would not have, or else lose the free bet vouchers altogether.

135.    The offer additionally had not informed him that if he won on the free bets, he would recover only the winnings associated with those free bets, and that PointsBet would not reimburse him for the difference in the overall loss resulting from his initial wager.

136.    Treading carefully now, in an effort to recoup as much as possible of his $500 loss, Plaintiff Gutman placed a number of low-risk, low-payout bets.

137.    Even if he had prevailed in all of his free bets, however, he would have been left with less than $500 in total.

138.    Plaintiff Gutman reached out to PointsBet's customer service to request a refund, but was refused.

139.    PointsBet's customer service referred him to its terms and conditions, wherein there is a passing reference to "Bonus Bets."

140.    In the original offer language, "Free Bets" was a capitalized term. In the terms and conditions, "Bonus Bets" is a separate capitalized term:



141.    Nothing in the terms and conditions, in other words, explained that Bonus Bets and Free Bets were the same thing, nor that Bonus Bets would expire.

142.    Nevertheless, PointsBet insisted that it was Plaintiff Gutman who should bear the cost for its own misleading advertising and its imprecise Terms and Conditions.

143.    Plaintiff Gutman subsequently filed a complaint with the New York Gaming Commission.

144.    Following that complaint, he received a follow-up call from PointsBet, on or around June 21, 2022.

145.    Notably, this was after PointsBet had adjusted the offer language on this website and was facing another consumer class action lawsuit for its misrepresentations.

25

146.    Nevertheless, PointsBet continued to insist that Plaintiff Gutman bore responsibility for placing his "risk-free" bet.

147.    To this day, PointsBet has declined to take responsibility for its own misleading advertising, necessitating this action.

**Plaintiff Ryan Boyle**

148.    Plaintiff Ryan Boyle is a resident of the state of Colorado.

149.    In March of 2021, in response to numerous advertisements he had seen as part of PointsBet's aggressive advertising campaign, Plaintiff Boyle placed a "risk-free" bet in reliance on PointsBet's "WELCOME" promotion.

150.    This promotion, depicted above, promises users that they will receive up to $500 in refunds for their first bet placed, and up to $1,500 in refunds for their second bet placed, should the bets fail to result in winnings.

151.    The promotion also described itself as "risk-free."

152.    Plaintiff Boyle understood that he would receive a refund in the event that the placed bet failed to secure the earnings based on PointsBet's representations.

153.    Indeed, Plaintiff Boyle had used other sports betting companies in the industry, and only signed up and placed bets using PointsBet to get the benefit of promotion.

154.    In reliance on these representations and because PointsBet promised him that he would get his money back and that the bet itself was risk-free, Plaintiff Boyle placed a bet for $150.

155.    Plaintiff Boyle lost his bet for $150.

156.    At that point, Plaintiff Boyle anticipated he would receive a refund via free bet credits, as the offer had stated.

157.    What it had *not* stated, however, is that the free bets could not be withdrawn or exchanged for cash.

158.    The offer additionally had not informed him that if he won on the free bets, he would recover only the winnings associated with those free bets, and that PointsBet would not reimburse him for the difference in the overall loss resulting from his initial wager.

159.    In the original offer language, "Free Bets" was a capitalized term. In the terms and conditions, "Bonus Bets" is a separate capitalized term:



160.    Nothing in the terms and conditions, in other words, explained that Bonus Bets and Free Bets were the same thing, nor that Bonus Bets would expire.

161.    More specifically, the offer had not informed him that the free bets expired within a very short window or else he would lose the free bet vouchers altogether—which is exactly what happened.

162.    In December of 2022, several months after he lost his first bet, Plaintiff Boyle reached out to PointsBet's customer service to request a refund, clearly indicating that he thought there was no risk involved and that he could obtain a refund for his original bet of $150.

163.    PointsBet refused to issue Plaintiff Boyle a refund and instead informed him simply that "Free bets have expirations dates" and added that he had received a free bet which, according to PointsBet's customer service representative, had "expired on 04/8/2022".

164.    PointsBet's reply message to Plaintiff Boyle exemplifies how quickly Free Bets expire:

> **Scottie (PointsBet Sportsbook)**
> Dec 22, 2022, 9:30 AM MST
>
> Hello Ryan,
>
> Thank you for contacting PointsBet.
>
> Your first bet was placed on 3/25 for $150. You received a free bet of $150 for this bet which expired on 4/8/2022
>
> To learn more about the app, we recommend checking out our help center here https://help.pointsbet.com/hc/en-us
>
> Best,
>
> Scottie

165.    Surprised that the Free Bet credit he had received had expired before he could even use it, Plaintiff Boyle again requested a refund of his $150 bet.

166.    PointsBet again refused to issue Plaintiff Boyle a refund, and instead offered to reissue the Free Bet credit "Out of goodwill". In doing so, PointsBet insisted that it was Plaintiff Boyle who should bear the cost for its own misleading advertising and its imprecise Terms and Condition.

167.    Notably, this was after PointsBet had adjusted the offer language on this website and was facing another consumer class action lawsuit for its misrepresentations.

168.    Plaintiff Boyle subsequently filed a complaint with the Colorado Division of Gaming.

169.    To this day, PointsBet has declined to take responsibility for its own misleading advertising, necessitating this action.

**Plaintiff Keith Nathan**

170.    Plaintiff Keith Nathan is a resident of the state of Illinois.

171.    In April of 2022, after seeing online advertisements that were part of PointsBet's

28

aggressive advertising campaign, he placed a "risk-free" bet in reliance on PointsBet's "WELCOME" promotion.

172.   This promotion, depicted above, promises users that they will receive up to $500 in refunds for their first bet placed, and up to $1,500 in refunds for their second bet placed, should the bets fail to result in winnings.

173.   The promotion also described itself as "risk-free."

174.   Additionally, PointsBet emailed Plaintiff Nathan, encouraging him to take advantage of the "risk-free" bets:



175.   Plaintiff Nathan had taken advantages of similar offers on another platform. Indeed, Plaintiff Nathan has used other sports betting companies in the industry, and only signed up and placed bets using PointsBet to get the benefit of promotion.

176.   Based on his experience with other sports betting companies in the industry, and on PointsBet's own representations, he understood that he would receive a cash-equivalent refund in the event that the placed bet failed to secure the earnings he sought.

177.   In reliance on these representations and because PointsBet promised him that he would get his money back and that the bet itself was risk-free, Plaintiff Nathan placed a $400 bet in April of 2022.

178.     Plaintiff Nathan lost his initial bet of $400.

179.     Plaintiff Nathan anticipated he would receive a refund via free bet credits, as the offer had stated.

180.     What it had *not* stated, however, is that the free bets could not be withdrawn or exchanged for cash.

181.     In the original offer language, "Free Bets" was a capitalized term. In the terms and conditions, "Bonus Bets" is a separate capitalized term:



182.     Nothing in the terms and conditions, in other words, explained that Bonus Bets and Free Bets were the same thing, nor that Bonus Bets would expire.

183.     More specifically, the offer had not informed him that the free bets expired within a very short window or else he would lose the free bet vouchers altogether—which is exactly what happened.

184.     In August of 2022, Plaintiff Nathan contacted PointsBet's customer service to inquire about the $400 in free bets that the promotion promised, because he was unable to view the free bet credits on his PointsBet account or within his wager history.

185.     To his surprise, PointsBet's customer service informed Plaintiff Nathan that he had been credited a $400 free bet on April 16, 2022, but that the bet had expired month earlier on May 16, 2022. As a result, he never placed a second bet and lost all $400 of his initial wager.

186.     PointsBet's customer service referred him to the site's help center, and insisted that it was Plaintiff Nathan who should bear the cost for its own misleading advertising and its imprecise Terms and Conditions.

187.     Notably, this was after PointsBet had adjusted the offer language on this website and was facing another consumer class action lawsuit for its misrepresentations.

188.     Plaintiff Nathan subsequently filed a complaint with the Illinois Gaming Board.

189.     To this day, PointsBet has declined to take responsibility for its own misleading advertising, necessitating this action.

**Plaintiff Kyle Johnson**

190.     Plaintiff Kyle Johnson is a resident of the state of Iowa.

191.     In February of 2022, in response to numerous advertisements he had seen as part of PointsBet's aggressive advertising campaign, he placed a "risk-free" bet in reliance on PointsBet's "WELCOME" promotion.

192.     This promotion, depicted above, promises users that they will receive up to $500 in refunds for their first bet placed, and up to $1,500 in refunds for their second bet placed, should the bets fail to result in winnings.

193.     The promotion also described itself as "risk-free."

194.     Plaintiff Johnson had taken advantages of similar offers on other platforms. Based on his experience with other sports betting companies in the industry, and on PointsBet's own representations, he understood that he would receive a refund in the event that the placed bet failed to secure the earnings he sought.

195.     Specifically, Plaintiff Johnson understood "risk free" language in the promotion to have the same meaning as it does in common usage.

196.    In reliance on PointsBet's representations, Plaintiff Johnson placed his first $600 bet.

197.    Ordinarily, Plaintiff Johnson is risk-averse. When he places bets, he specifically targets low-return bets with higher chances of yielding a positive outcome.

198.    Here, because PointsBet promised him that he would get his money back and that the bet itself was risk-free, regardless of the stated odds of winning, he specifically opted for a risky bet.

199.    Plaintiff Johnson lost his initial bet of $600.

200.    At that point, Plaintiff Johnson anticipated he would receive a refund via free bet credits, as the offer had stated.

201.    What the promotion had *not* stated, however, is that the free bets could not be withdrawn or exchanged for cash.

202.    The offer additionally had not informed him that the free bets expired within a very short window, forcing him to place bets he otherwise would not have, or else lose the free bet vouchers altogether.

203.    The offer additionally had not informed him that if he won on the free bets, he would recover only the winnings associated with those free bets, and that PointsBet would not reimburse him for the difference in the overall loss resulting from his initial wager.

204.    In an effort to recoup as much as possible of his $600 loss, Plaintiff Johnson placed a second bet for $600.

205.    Plaintiff Johnson lost his second bet for $600.

206.    Plaintiff Johnson reached out to PointsBet's customer service to request a refund, but was refused.

207.    PointsBet's customer service referred him to its terms and conditions, wherein there is a passing reference to "Bonus Bets."

208.    In the original offer language, "Free Bets" was a capitalized term. In the terms and conditions, "Bonus Bets" is a separate capitalized term:



**4.9. BONUS BET WINNINGS**

1. Should your Bonus Bet be successful, only the winnings from the Bonus Bet will be credited into your Account. This means that your winnings will exclude the initial Bonus Bet stake. For example, a winning $50 Bonus Bet placed on a selection paying $3.00 (+200) will credit winnings of $100 into your Account. The $50 Bonus Bet stake will not be returned.

209.    Nothing in the terms and conditions, in other words, explained that Bonus Bets and Free Bets were the same thing, nor that Bonus Bets would expire.

210.    Nevertheless, PointsBet insisted that it was Plaintiff Johnson who should bear the cost for its own misleading advertising and its imprecise Terms and Conditions.

211.    Notably, this was after PointsBet had adjusted the offer language on this website and was facing another consumer class action lawsuit for its misrepresentations.

212.    Plaintiff Johnson subsequently filed a complaint with the Iowa Racing and Gaming Commission.

213.    To this day, PointsBet has declined to take responsibility for its own misleading advertising, necessitating this action.

**Plaintiff Eric Spivack**

214.    Plaintiff Eric Spivack is a resident of the commonwealth of Virginia.

215.    In February of 2022, in response to numerous advertisements he had seen as part of PointsBet's aggressive advertising campaign, he placed a "risk-free" bet in reliance on

PointsBet's "WELCOME" promotion.

216.    This promotion, depicted above, promises users that they will receive up to $500 in refunds for their first bet placed, and up to $1,500 in refunds for their second bet placed, should the bets fail to result in winnings.

217.    The promotion also described itself as "risk-free."

218.    Plaintiff Spivack had placed bets using other sports betting companies. Based on his experience with other sports betting companies in the industry, and on PointsBet's own representations, he understood that he would receive a refund in the event that the placed bet failed to secure the earnings he sought.

219.    In reliance on these representations and believing that his bets would be risk-free, Plaintiff Spivack placed his first $1000 bet more aggressively than he would normally bet.

220.    Plaintiff Spivack lost his first bet for $1000.

221.    Plaintiff Spivack anticipated he would receive a refund via free bet credits, as the offer had stated.

222.    What it had *not* stated, however, is that the free bets could not be withdrawn or exchanged for cash.

223.    The offer additionally had not informed him that the free bets expired within a very short window, forcing him to place bets he otherwise would not have, or else lose the free bet vouchers altogether.

224.    The offer additionally had not informed him that if he won on the free bets, he would recover only the winnings associated with those free bets, and that PointsBet would not reimburse him for the difference in the overall loss resulting from his initial wager.

225.    Plaintiff Spivack then placed a second bet for $1000 using the free bet credit he

received after losing his first bet.

226.    Plaintiff Spivack won $869.60 on his second bet.

227.    Because his winnings excluded all of the $1000 free bet credit he wagered as part of his second bet, Plaintiff Spivack was left nothing after his second bet.

228.    Plaintiff Spivack reached out to PointsBet's customer service to request a refund, but PointsBet refused to issue a refund.

229.    PointsBet's customer service referred him to its terms and conditions, wherein there is a passing reference to "Bonus Bets."

230.    In the original offer language, "Free Bets" was a capitalized term. In the terms and conditions, "Bonus Bets" is a separate capitalized term:



**4.9. BONUS BET WINNINGS**

1. Should your Bonus Bet be successful, only the winnings from the Bonus Bet will be credited into your Account. This means that your winnings will exclude the initial Bonus Bet stake. For example, a winning $50 Bonus Bet placed on a selection paying $3.00 (+200) will credit winnings of $100 into your Account. The $50 Bonus Bet stake will not be returned.

231.    Nothing in the terms and conditions, in other words, explained that Bonus Bets and Free Bets were the same thing, nor that Bonus Bets would expire.

232.    Nevertheless, PointsBet insisted that it was Plaintiff Spivack who should bear the cost for its own misleading advertising and its imprecise Terms and Conditions.

233.    Plaintiff Spivack subsequently filed a complaint with the Virginia Lottery.

234.    To this day, PointsBet has declined to take responsibility for its own misleading advertising, necessitating this action.

//

## CLASS ACTION ALLEGATIONS

235.     Plaintiffs bring this class action pursuant to Federal Rules of Civil Procedure ("Rule(s)") 23(a) and 23(b)(3) and seeks certification of the class as identified below.

### Definition of Proposed Class

236.     Plaintiffs Gutman, Boyle, Nathan, Johnson, and Spivack bring this class action on behalf of the following class (the "Class"):

> **All persons who created an account with PointsBet, whether via its website, mobile app, or third-party platform, who signed up for PointsBet accounts and placed bets on its platform using codes from promotional offers. Excluded from the Class are Defendants and their officers and directors at all relevant times, members of Defendants' immediate families and their legal representatives, heirs, successors, and assigns, and any entity in which the Defendants have or had a controlling interest.**

237.     Within the Class, Plaintiff Eric Gutman also brings this action on behalf of himself and on behalf of the following subclass (the "New York Subclass"): **All persons in New York, within the applicable statute of limitations, who signed up for PointsBet accounts and placed bets on its platform using codes from promotional offers.**

238.     Within the Class, Plaintiff Ryan Boyle also brings this action on behalf of himself and on behalf of the following subclass (the "Colorado Subclass"): **All persons in Colorado, within the applicable statute of limitations, who signed up for PointsBet accounts and placed bets on its platform using codes from promotional offers.**

239.     Within the Class, Plaintiff Keith Nathan also brings this action on behalf of himself and on behalf of the following subclass (the "Illinois Subclass"): **All persons in Illinois, within**

the applicable statute of limitations, who signed up for PointsBet accounts and placed bets on its platform using codes from promotional offers.

240.    Within the Class, Plaintiff Kyle Johnson also brings this action on behalf of himself and on behalf of the following subclass (the "Iowa Subclass"): **All persons in Iowa, within the applicable statute of limitations, who signed up for PointsBet accounts and placed bets on its platform using codes from promotional offers**.

241.    Within the Class, Plaintiff Eric Spivack also brings this action on behalf of himself and on behalf of the following subclass (the "Virginia Subclass"): **All persons in Virginia, within the applicable statute of limitations, who signed up for PointsBet accounts and placed bets on its platform using codes from promotional offers**.

242.    Plaintiffs reserve the right to amend or modify the Class in connection with a Motion for Class Certification or as the result of discovery.

243.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of the claims on a class-wide basis using the same evidence as individual Class Members would use to prove those elements in individual actions alleging the same claims.

<u>Size of the Proposed Class</u>

244.    Plaintiffs do not currently know the exact size of the proposed Class. However, Plaintiffs are aware that the Class is so numerous that joinder of the individual Members of the proposed Class is impracticable. On information and belief, the Class includes at least thousands of people throughout the United States. The number and identities of Class Members are unknown to Plaintiffs, but can be ascertained through discovery, including into PointsBet account records, electronic messages, and customer service files, as well as through published notice.

<u>Adequacy of Representation by the Class Representative</u>

245.    Plaintiffs' claims are typical of the Class, and Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have no interests adverse to the interests of the Class and have retained counsel with experience in the prosecution of class actions and complex litigation, including consumer litigation, and who will vigorously prosecute this action.

<u>Common Questions of Law and Fact</u>

246.    Questions of law or fact common to the Class exist as to Plaintiffs and all Class Members, and these common questions predominate over any questions affecting only individual Class Members. Among the common questions of law and fact are the following:

a.   Whether PointsBet's advertising and promotional offers promised consumers their bets would be "risk free";

b.   Whether PointsBet offered to refund consumers for losses associated with the "risk-free" bets it induced them to place;

c.   Whether PointsBet adequately disclosed to consumers the difference between free bet credits and ordinary bets;

d.   Whether PointsBet adequately disclosed to consumers that its promotional vouchers would not be redeemable for cash;

e.   Whether PointsBet adequately disclosed to consumers that its promotional vouchers would expire within 30 days;

f.   Whether PointsBet adequately disclosed to consumers that they would be required to place a second bet in order to receive the "refund" it had promised;

g.   Whether PointsBet's promotions and advertising were false and materially misleading;

h.   Whether PointsBet acted with knowledge or reckless disregard for the misleading nature of its advertisements;

i.   When PointsBet first received notice that its promotions and advertisements were misleading consumers;

j.   Whether PointsBet intended for consumers to rely on its misleading statements;

k.   Whether consumers reasonably relied on PointsBet's misleading statements and promotions;

l.   Whether PointsBet's issuance of limited expiration free bet credits satisfied its obligations to consumers under the terms of its offer to them;

m.   PointsBet's compliance (or lack thereof) with regulatory disclosure requirements under the FTCA and CARD Act;

n.   Whether Defendants were unjustly enriched;

o.   Whether Defendants owed Plaintiffs and the Class a duty, and whether they breached the same; and

p.   The amount of damages sustained by Plaintiffs and the Class.

<u>Typicality of Claims of the Class Representatives</u>

247.   Plaintiffs do not anticipate any difficulties in the management of this action as a class action. The Class is ascertainable, and there is a well-defined community of interests in the questions of law and fact alleged because the rights of each Class Member were violated in similar fashion based on Defendants' misconduct. Notice can be provided through records and publication, the cost of which is properly imposed upon Defendants.

248.   Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs and the Class Members. Common questions of law and fact

predominate over any individual questions that may arise.

249.    The injuries sustained by Plaintiffs and the Class Members flow, in each instance, from a common nucleus of operative facts, *i.e.*, Defendants' misleading and deceptive advertising, which lured Plaintiffs and the Class Members into creating accounts and placing bets on its platform in reliance on promises of "risk-free" betting and "refunds" when, in actuality, they bore a significant risk of losing the entire amount of their wagers.

250.    Plaintiffs' claims are typical of the claims of the Class they seek to represent. Defendants' uniform obligations relating to the advertising of its sports betting services apply equally to Plaintiffs and all Class Members. Moreover, the defenses, if any, that will be asserted against Plaintiffs' claims are typical of the defenses, if any, that will be asserted against all Class Members' claims (*e.g.,* that the promotions were not misleading, or that a reasonable person would have understood there would still be risks incurred when placing their "risk-free" bets).

<u>Nature of the Notice to the Proposed Class</u>

251.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. The vast majority of the names and contact information of the Class Members is likely available from Defendants or their partners.

252.    The class definition is carefully drawn such that the Class Members can easily be identified and notified using standard class notification methods, including analysis of Defendants' sales records, mailing, electronic notification, and other methods.

253.    To the extent possible, Plaintiffs contemplate providing notice(s) to the Class, as approved by the Court, through the mail or as otherwise directed. In the alternative or in connection with mailed notices, Plaintiffs may utilize paid advertising notices online or in media likely to draw the attention of Class Members *e.g.*, specialty magazines. The notice(s) shall, among other

40

things, advise the Class that they shall be entitled to "opt out" of the Class if they so request by a date specified within the notice and that any judgment, whether favorable or not, entered in this case will bind all members except those who affirmatively exclude themselves by timely opting out.

Additional Matters Pertinent to the Findings as

Provided by Fed. R. Civ. P. 23(b)(3)

254.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, and individual joinder of all Class Members is impracticable, if not impossible, because the massive number of Class Members are scattered throughout the world. Moreover, the cost to the court system of such individualized litigation would be substantial. Individualized litigation would likewise present the potential for inconsistent or contradictory judgments and would result in significant delay and expense to all parties and courts hearing virtually identical lawsuits. By contrast, the conduct of this action as a class action would present fewer management difficulties, conserve the resources of the parties and the courts, and protect the rights of each Class Member and maximize recovery to them.

255.    Given the amount in controversy for each individual Member of the Class, the relief sought in this case, that Defendants have acted on grounds generally applicable to the entirety of the Class, and the large size of the anticipated Class, the interest of each Class Member in controlling his or her own case is relatively low; there are relatively minimal expected difficulties likely to be encountered in managing a class action; Plaintiffs anticipate that relevant foreign courts will recognize a United States judgment in this case; Plaintiffs are not aware of other litigation by individual Class Members already in progress involving the same controversy; PointsBet specifically holds itself out to the public as offering services jointly on behalf of PointsBet USA

and the PointsBet Subsidiaries, and there is a strong desirability of consolidating all claims in a single action before a single court in the United States.

## FIRST CLAIM FOR RELIEF

**Violation of Colorado Consumer Protection Act (Colo. Rev. Stat. §§6-1-101, *et seq*.)**

**(By Plaintiffs Eric Gutman, Ryan Boyle, Keith Nathan, Kyle Johnson, and Eric Spivack,**

**individually, and on behalf of the Class)**

256.    Plaintiffs incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

257.    Upon information and belief, all of PointsBet's deceptive marketing as described herein was conducted by PointsBet from within the state of Colorado.

258.    Each PointsBet entity is a "person" as defined by Colo. Rev. Stat. 601-102(6).

259.    Plaintiffs Gutman, Boyle, Nathan, Johnson, and Spivack, as well as the Class and general public, are actual or potential consumers of the products and services offered by PointsBet, or are successors in interest to actual consumers.

260.    A company doing business in Colorado violates the Colorado Consumer Protection Act when it does any of the following:

a.   Advertises goods, services, or property with intent not to sell them as advertised;

b.   Employs "bait and switch" advertising, which is advertising accompanied by an effort to sell goods, services, or property other than those advertised or on terms other than those advertised, when the offer requires tie-in sales or other undisclosed conditions to be met prior to selling the advertised goods, property, or services;

    c.  Fails to disclose material information concerning goods, services, or property, which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction; and

    d.  Fails, in connection with any solicitation, oral or written, to clearly and prominently disclose immediately adjacent to or after the description of any item or prize to be received by any person the actual retail value of each item or prize to be awarded.

261.    PointsBet has, for a period of months, advertised to consumers its "risk-free" offers, including "refunds," despite having no intention of honoring this advertising.

262.    PointsBet's advertising specifically violates Colorado law, as described above, in that it fails to provide legally required disclosures to consumers which are essential to prevent consumer confusion.

263.    Users who placed bets did not receive refunds.

264.    Users who placed bets instead received credits, the value of which was not disclosed.

265.    The bets themselves were not "risk-free."

266.    Users' ability to recover any portion of their lost funds was contingent upon their use of and success from placing "free bets," a condition that was not disclosed at the time of the advertisement or when consumers entered into the transaction.

267.    PointsBet failed to disclose the full terms of its promotional program, in an effort to entice consumers to sign up on its platform who would not have if they had realized that the "risk-free" offer would not allow them to obtain refunds.

268.     Information regarding the retail value of "free bet credits" was not disclosed, nor was it apparent that these would have no cash value and would expire within 30 days.

269.     PointsBet's representations and omissions were material because they were likely to deceive reasonable consumers about the nature of PointsBet's "risk-free" offer, inducing them into spending money and placing bets on its platform.

270.     PointsBet intended to mislead Plaintiffs and the other Class members and induce them to rely on Defendants' misrepresentations and omissions.

271.     Had Plaintiffs and the other Class members known the truth about PointsBet's offer terms, they would not have created accounts with PointsBet or placed bets on its platform.

272.     PointsBet engaged in the above unfair and deceptive acts or practices in the course of its business.

273.     PointsBet engaged in the above unfair and deceptive acts or practices with malice and/or willfulness.

274.     As a direct and proximate result of PointsBet's unfair and deceptive practices, Plaintiffs and the Class suffered injuries in the form of monetary losses when they failed to receive refunds for bets they placed in reliance on PointsBet's promotional offerings.

275.     The above unfair and deceptive practices and acts by PointsBet were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiffs and the Class that they could not reasonably avoid, even by attempting to specifically review PointsBet's referenced (but unavailable) terms and conditions as associated with its promotions.

276.     PointsBet knew or should have known that its misrepresentations and omissions would deceive Plaintiffs and the Class. PointsBet's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with

respect to the rights of Plaintiffs and the Class.

277.   Plaintiffs and the Class seek relief under Colorado's Consumer Protection Act, including (but not limited to) compensatory damages, statutory damages, restitution, penalties, injunctive relief, treble damages, and/or attorney's fees and costs.

## SECOND CLAIM FOR RELIEF

### Negligent Misrepresentation (under Colorado common law)

### (By Plaintiffs Eric Gutman, Ryan Boyle, Keith Nathan, Kyle Johnson, and Eric Spivack, individually, and on behalf of the Class)

278.   Plaintiffs incorporate by reference all allegations in this Complaint and restates them as if fully set forth herein.

279.   PointsBet advertised to consumers that the bets they placed in accordance with its promotional offer would be "risk free" and would provide them with a "refund."

280.   These representations were false. The bets were not risk-free. There was significant risk involved that consumers would lose their money altogether. At minimum, they would have to place long-odds bets in order to recover the money they lost if they lost their initial bets, but PointsBet did not convey that part, instead relying on its "risk-free" messaging.

281.   PointsBet gave this information to consumers in the course of PointsBet's business, in transactions in which PointsBet had financial interest.

282.   PointsBet gave this information to consumers for use in the business transaction.

283.   PointsBet was negligent in communicating this information to consumers.

284.   PointsBet gave these representations with the intent or knowledge that its consumers would act in reliance on that information.

285.   These representations were material, in that a reasonable viewer would rely on them

when deciding to proceed with creating a PointsBet account and placing a bet in reliance on the promotion.

286.    These are not statements of puffery but are statements regarding the value of the services to be provided and were representations of fact.

287.    PointsBet owed a duty not to mislead its customers and the public at large with its advertisements.

288.    PointsBet breached this duty by telling consumers its promotion would allow them to place "risk free" bets that would afford them "refunds" when, in actuality, that was untrue.

289.    At all relevant times when such misrepresentations were made, PointsBet knew or was negligent in not knowing that these promotions were not "risk free" and that consumers would not receive "refunds." PointsBet had no reasonable grounds for believing its misrepresentations were not false or misleading.

290.    PointsBet intended that Plaintiff and other consumers rely on these representations, as evidenced by their use of prominent promotional advertising with almost no reference to additional terms and conditions, their failure to properly link promotional terms and conditions, and their failure to explain in detail in their general terms and conditions how free bet credits would work.

291.    Plaintiffs and the Class relied on these misleading misrepresentations in creating PointsBet accounts and placing bets on the PointsBet platform, and had the correct facts been known, they would not have created accounts or placed bets on the platform.

292.    Thus, as a direct and proximate result of PointsBet's negligent misrepresentations, Plaintiffs and the Class were damaged when they failed to win their "risk-free" bets but nevertheless lost some or all of the money they initially used to place the "risk-free" bets in the

first place.

293.     Plaintiffs and the Class seek relief for their injuries in an amount to be proven at trial, including (but not limited to) for compensatory damages and costs.

**THIRD CLAIM FOR RELIEF**

**Intentional Misrepresentation (under Colorado common law)**

**(By Plaintiffs Eric Gutman, Ryan Boyle, Keith Nathan, Kyle Johnson, and Eric Spivack, individually, and on behalf of the Class)**

294.     Plaintiffs incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

295.     PointsBet advertised its sign-up offers in a manner indicating that bets placed in reliance thereon would be "risk free" and that users would receive a "refund." However, the promotions do indeed carry a risk of loss and users receive only non-transferable vouchers with no cash value, require users to place another round of bets, and may never allow them to recoup their initial losses. Therefore, PointsBet has made misrepresentations as to the promotional offers—they carry significant risk.

296.     PointsBet's misrepresentations regarding these promotional offers are material to the reasonable consumer because they relate to the characteristics, nature, and value of the services provided, as well as of the advertised offer. A reasonable consumer would attach importance to such representations and would be induced to act thereon in making the decision to place bets on the PointsBet platform in reliance on the same

297.     PointsBet has also engaged in misrepresentation by concealment in that it has failed to disclose material information regarding the nature of its "risk-free" betting promotion, with the intent that this induce consumers to rely on the same, knowing that by omitting information about

the nature of its promotion it would induce consumers to sign up for PointsBet accounts for which they would not ordinarily be likely to sign up.

298.    At all relevant times when such misrepresentations were made, PointsBet knew that the representations were misleading, or has acted recklessly in making the representations, without regard to the truth.

299.    Indeed, since the time this lawsuit was filed, PointsBet has altered its advertising and promotions; it now advertises "second chance betting" as opposed to "risk-free betting."

300.    PointsBet intends that Plaintiffs and other consumers rely on these representations, as evidenced by the following:

　　a.  The graphical design of its offers, which loudly proclaim the offers to be "risk free," often without any asterisks or adjacent disclosures to indicate that any other terms and conditions apply;

　　b.  Its use of "T&C" to denote "terms and conditions";

　　c.  The fact that its general terms and conditions do not include an explanation of how free bets work;

　　d.  The miniscule, low-contrast font to draw consumer attention away from any suggestion that additional terms apply;

　　e.  The complete inaccessibility of the promotional terms and conditions to consumers prior to June 2022;

　　f.  The use of "risk-free" language to describe a scenario where consumers may, indeed, lose their money entirely;

　　g.  The misuse of "refund" to describe the provision of a valueless free bet credit with no cash value;

h.  The failure to make mandatory disclosures required under Colorado law regarding these promotional credits;

i.  The failure to disclose the expiration date for these promotional credits; and

j.  PointsBet's own statements regarding the aggressively competitive market for sports betting companies and its need to deploy strategies to prevent consumers from migrating to a competitor.

301.  Plaintiffs and the Class reasonably and justifiably relied on PointsBet's intentional misrepresentations when placing bets via its promotions. Among other things, this reliance was justified because consumers were entitled to understand that these advertisements would comply with applicable law.

302.  Had they known the truth, Plaintiffs and the Class would not have placed bets in the first place, particularly bets that otherwise would bear a high risk of loss.

303.  Therefore, as a direct and proximate result of PointsBet's intentional misrepresentations, Plaintiffs and members of the Class have suffered privacy and economic losses and other general and specific damages, including but not limited to: sharing significant personal information with PointsBet; the amounts paid to PointsBet for placing bets in the first place, mental health consequences associated with engaging in subsequent rounds of unanticipated additional addictive gambling activities; as well as losses associated with any subsequent bets placed in an effort to recover their original funds.

**FOURTH CLAIM FOR RELIEF**

**Negligence (under Colorado common law)**

**(By Plaintiffs Eric Gutman, Ryan Boyle, Keith Nathan, Kyle Johnson, and Eric Spivack, individually, and on behalf of the Class)**

304.     Plaintiffs incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

305.     PointsBet advertised to consumers that the bets they placed in accordance with its promotional offer would be "risk free" and would provide them with a "refund."

306.     These representations were false. The bets were not risk-free. There was significant risk involved that consumers would lose their money altogether. At minimum, they would have to place long-odds bets in order to recover the money they lost if they lost their initial bets, but PointsBet did not convey that part, instead relying on its "risk-free" messaging.

307.     PointsBet owed a duty not to mislead its customers and the public at large with its advertisements.

308.     Specifically, Colorado sports betting companies have a duty under Colorado regulations not to describe gambling activities as "risk free" when there is potential risk involved. *See* 1 CCR 207-2 Rule 9.4(b)-(c).

309.     By advertising its promotions and services as being "risk free" when, in fact, they were not, PointsBet breached this duty of care.

310.     As a result, Plaintiffs and the Class were damaged when they engaged in activities laden with risk after being informed by PointsBet there would be no risk involved as a result of its promotion.

311.     As a result, Plaintiffs and the Class lost money and were damaged

312.     At all relevant times when such misrepresentations were made, PointsBet knew or was negligent in not knowing that these promotions were not "risk free" and that consumers would not receive "refunds." PointsBet had no reasonable grounds for believing its misrepresentations were not false or misleading.

313. Thus, as a direct and proximate result of PointsBet's negligence, Plaintiffs and the Class were damaged in that they created accounts they would not otherwise have created and, furthermore, failed to win their "risk-free" bets but nevertheless lost some or all of the money they initially used to place the "risk-free" bets in the first place.

314. Plaintiffs and the Class seek relief for their injuries in an amount to be proven at trial, including (but not limited to) for compensatory damages and costs.

## FIFTH CLAIM FOR RELIEF

## Violation of N.Y. Gen. Bus. Law §§349 & 350

## (By Eric Gutman, individually, and on behalf of the New York Subclass)

315. Plaintiff Gutman incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

316. Plaintiff Gutman brings this claim against PointsBet under New York General Business Law ("N.Y. Gen. Bus. Law") §§349 & 350, on behalf of himself and the New York Subclass.

317. PointsBet's conduct was misleading, deceptive, unlawful, fraudulent, and unfair in that Defendants materially misrepresented the nature of their promotions.

318. PointsBet caused to be disseminated through New York state and elsewhere, through advertising, marketing, and other publications, statements that were untrue and misleading, and which it knew were untrue and misleading.

319. PointsBet's misrepresentations were material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers were and continue to be exposed to PointsBet's material misrepresentations.

320. Additionally, PointsBet's conduct was unlawful.

321.    New York law requires that all gambling advertisements "comply with Racing, Pari-Mutuel Wagering and Breeding Law [PML] section 1363 and with advertising guidelines issued by the National Council on Problem Gambling." *See* 9 CRR-NY 5325.6.

322.    Plaintiff Gutman and the New York Subclass have been injured by PointsBet's deceptive acts or practices.

323.    Plaintiff Gutman and the New York Subclass have no adequate remedy at law.

324.    PointsBet's conduct has caused and is causing immediate and irreparable injury to Plaintiff Gutman and the New York Subclass and will continue to both damage Plaintiff Gutman and the New York Subclass and deceive the public unless enjoined by this Court.

325.    Any person who has been injured by reason of any violation of N.Y. Gen. Bus. Law §349 may bring an action in his or her own name to enjoin such unlawful acts or practices, an action to recover their actual damages or $50, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not exceeding three times the actual damages, in addition to $1,000 per violation, if the court finds that a defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

326.    Pursuant to N.Y. Gen. Bus. Law §350(e) Plaintiff Gutman and the New York Subclass seek monetary damages (including actual damages, or $500, whichever is greater, and minimum, punitive, or treble and/or statutory damages pursuant to N.Y. Gen. Bus. Law §350(a1)), injunctive relief, restitution, and disgorgement of all monies obtained by means of Defendants' unlawful conduct, interest, and attorney's fees and costs.

//

//

**SIXTH CLAIM FOR RELIEF**

**Negligent Misrepresentation (under New York common law)**

**(By Plaintiffs Eric Gutman, individually, and on behalf of the New York Subclass)**

327.   Plaintiff Gutman incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

328.   Plaintiff Gutman brings this claim against PointsBet under New York common law, on behalf of himself and the New York Subclass.

329.   PointsBet advertised to consumers that the bets they placed in accordance with its promotional offer would be "risk free" and would provide them with a "refund."

330.   These representations were false.

331.   These representations were material, in that a reasonable viewer would rely on them when deciding to proceed with creating a PointsBet account and placing a bet in reliance on the promotion.

332.   PointsBet owed a duty not to mislead its customers and the public at large with its advertisements.

333.   PointsBet breached this duty by telling consumers its promotion would allow them to place "risk free" bets that would afford them "refunds" when, in actuality, that was untrue.

334.   At all relevant times when such misrepresentations were made, PointsBet knew or was negligent in not knowing that these promotions were not "risk free" and that consumers would not receive "refunds." PointsBet had no reasonable grounds for believing its misrepresentations were not false or misleading.

335.   PointsBet intended that Plaintiff Gutman and members of the New York Subclass rely on these representations, as evidenced by their use of prominent promotional advertising with

almost no reference to additional terms and conditions, their failure to properly link promotional terms and conditions, and their failure to explain in detail in their general terms and conditions how free bet credits would work.

336.     Plaintiff Gutman and the New York Subclass relied on these misleading misrepresentations in creating PointsBet accounts and placing bets on the PointsBet platform, and had the correct facts been known, they would not have created accounts or placed bets on the platform.

337.     Thus, as a direct and proximate result of PointsBet's negligent misrepresentations, Plaintiff Gutman and the New York Subclass were damaged when they failed to win their "risk-free" bets but nevertheless lost some or all of the money they initially used to place the "risk-free" bets in the first place.

338.     Plaintiff Gutman and the New York Subclass seek relief for their injuries in an amount to be proven at trial, including (but not limited to) for compensatory damages and costs.

**SEVENTH CLAIM FOR RELIEF**

**Intentional Misrepresentation (under New York common law)**

**(By Eric Gutman, individually, and on behalf of the New York Subclass)**

339.     Plaintiff Gutman incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

340.     Plaintiff Gutman brings this claim against PointsBet under New York common law, on behalf of himself and the New York Subclass.

341.     PointsBet advertised its sign-up offers in a manner indicating that bets placed in reliance thereon would be "risk free" and that users would receive a "refund." However, the promotions do indeed carry a risk of loss and users receive only non-transferable vouchers with

no cash value that may never allow them to recoup their initial losses. Therefore, PointsBet has made misrepresentations as to the promotional offers.

342.    PointsBet's misrepresentations regarding these promotional offers are material to the reasonable consumer because they relate to the characteristics, nature, and value of the services provided, as well as of the advertised offer. A reasonable consumer would attach importance to such representations and would be induced to act thereon in making the decision to place bets on the PointsBet platform in reliance on the same.

343.    At all relevant times when such misrepresentations were made, PointsBet knew that the representations were misleading, or has acted recklessly in making the representations, without regard to the truth.

344.    PointsBet intended that Plaintiff Gutman and members of the New York Subclass rely on these representations, as evidenced by the following:

   a.   The graphical design of its offers, which loudly proclaim the offers to be "risk free," often without any asterisks or adjacent disclosures to indicate that any other terms and conditions apply;

   b.   Its use of "T&C" to denote "terms and conditions";

   c.   The fact that its general terms and conditions do not include an explanation of how free bets work;

   d.   The miniscule, low-contrast font to draw consumer attention away from any suggestion that additional terms apply;

   e.   The complete inaccessibility of the promotional terms and conditions to consumers prior to June 2022;

   f.   The use of "risk-free" language to describe a scenario where consumers may,

indeed, lose their money entirely;

g. The misuse of "refund" to describe the provision of a valueless free bet credit with no cash value;

h. The failure to make mandatory disclosures required under Colorado and New York law regarding these promotional credits;

i. The failure to disclose the expiration date for these promotional credits; and

j. PointsBet's own statements regarding the aggressively competitive market for sports betting companies and its need to deploy strategies to prevent consumers from migrating to a competitor.

345.    Plaintiff Gutman and the New York Subclass reasonably and justifiably relied on PointsBet's intentional misrepresentations when placing bets via its promotions. Among other things, this reliance was justified because consumers were entitled to understand that these advertisements would comply with applicable law.

346.    Had they known the truth, Plaintiff Gutman and members of the New York Subclass would not have placed bets in the first place, particularly bets that otherwise would bear a high risk of loss.

347.    Therefore, as a direct and proximate result of PointsBet's intentional misrepresentations, Plaintiff Gutman and members of the New York Subclass have suffered economic losses and other general and specific damages, including but not limited to the amounts paid to PointsBet for placing bets in the first place, as well as losses associated with any subsequent bets placed in an effort to recover their original funds.

//

//

## EIGHTH CLAIM FOR RELIEF

### Fraudulent Inducement (under New York common law)

### (By Eric Gutman, individually, and on behalf of the New York Subclass)

348.    Plaintiff Gutman incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

349.    Plaintiff Gutman brings this claim against PointsBet individually and on behalf of the members of the New York Subclass.

350.    PointsBet misrepresented multiple material facts about its promotional offers, as described throughout this Complaint. Specifically, it misrepresented the "risk-free" nature of bets placed in reliance on its promotions, misrepresented the availability of "refunds," misrepresented the nature of "free bet credits," misrepresented the fact that consumers could, in fact, lose the entire amount wagered in reliance on the promotion, and failed to make legally required disclosures about the nature of the promotion, the expiration of the free bet credits, the fact that free bet credits had no cash value and could not be transferred or redeemed for cash, and the fact that consumers would be required to place a second round of bets in order to attempt to recover the amounts lost in their initial wagers.

351.    Plaintiff Gutman and the New York Subclass relied on PointsBet's representations and omissions in creating accounts on PointsBet and in placing wagers on the platform in reliance on the promotion.

352.    Plaintiff Gutman and the New York Subclass were justified in so relying, because they were entitled to believe that PointsBet would not violate the law by failing to make requisite disclosures to its consumers, or to misrepresent the nature of its advertised offers.

353.    At the time PointsBet made these misrepresentations to consumers, it knew them

to be false.

354.    At the time PointsBet made these misrepresentations to consumers, it had no present intent to fulfil the terms of the promotional offer as advertised to consumers.

355.    As a result of PointsBet's misrepresentations, Plaintiff Gutman and members of the New York Subclass sustained monetary damages amounting to the total losses each sustained in reliance on placing "risk free" bets.

356.    Absent these misrepresentations, Plaintiff Gutman and the New York Subclass would not have created accounts or placed bets on the PointsBet platform.

357.    Therefore, as a direct and proximate result of PointsBet's intentional misrepresentations, Plaintiff Gutman and members of the New York Subclass have suffered economic losses and other general and specific damages, including, but not limited to, the amounts paid to PointsBet for placing bets in the first place, as well as losses associated with any subsequent bets placed in an effort to recover their original funds.

### NINTH CLAIM FOR RELIEF

**Quasi Contract/Unjust Enrichment/Restitution (under New York common law)**

**(By Eric Gutman, individually, and on behalf of the New York Subclass)**

358.    Plaintiff Gutman incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

359.    Plaintiff Gutman brings this claim against PointsBet individually and on behalf of the members of the New York Subclass.

360.    As alleged herein, PointsBet has intentionally and/or recklessly made misleading misrepresentations to Plaintiff Gutman and the New York Subclass to induce them to create accounts and place bets on its platform.

361.   Plaintiff Gutman and the New York Subclass have reasonably relied on these misleading representations and have not received the benefits promised by PointsBet.

362.   Plaintiff Gutman and the New York Subclass therefore have been induced by PointsBet's misleading and deceptive representations about the promotional offers, and paid more money to PointsBet to place bets than they otherwise would and/or should have paid.

363.   Plaintiff Gutman and the New York Subclass have conferred a benefit upon PointsBet as PointsBet has retained monies paid to them by Plaintiff and the Subclass.

364.   The money PointsBet received was obtained under circumstances that were at the expense of Plaintiff Gutman and the members of the New York Subclass; *i.e.*, Plaintiff Gutman and the members of the New York Subclass did not receive the full value of the benefit conferred upon PointsBet.

365.   Therefore, it is inequitable and unjust for PointsBet to retain the profit, benefit, or compensation conferred upon it without paying Plaintiff Gutman and the New York Subclass back for the difference of the full value of the benefits compared to the value actually received.

366.   As a direct and proximate result of PointsBet's unjust enrichment, Plaintiff Gutman and members of the New York Subclass are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by PointsBet from its deceptive, misleading, and unlawful conduct as alleged herein.

## TENTH CLAIM FOR RELIEF

### Violation of Ch. 815 Ill. Comp. Stat. §§505, *et seq.* & §§510, *et seq.*

### (By Keith Nathan, individually, and on behalf of the Illinois Subclass)

367.   Plaintiff Keith Nathan incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

59

368. Plaintiff Keith Nathan brings this claim against PointsBet for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, Illinois Compiled Statutes ("Ill. Comp. Stat.") 815 §§505, *et seq.* & §§510, *et seq.*, on behalf of himself and the Illinois Subclass.

369. Each PointsBet entity is a "person" as defined by 815 Ill. Comp. Stat. §505/1(c).

370. Plaintiff Nathan, as well as each member of the Illinois Subclass, are both a "person" as defined by 815 Ill. Comp. Stat. §505/1(c) as well as actual or potential "consumer[s]" of the products and services offered by PointsBet, or are successors in interest to actual persons or consumers as defined by 815 Ill. Comp. Stat. §505/1.

371. The circumstances that relate to the transactions giving rise to this claim occurred primarily and substantially in Illinois because PointsBet caused to be disseminated throughout the state of Illinois through advertising, marketing, and other publications, statements that were deceptive and misleading, and which it knew were untrue and misleading.

372. PointsBet's conduct was unfair and deceptive in that PointsBet used and employed deception, fraud, false promises, and misrepresentations about the nature of its promotions.

373. PointsBet's conduct was also unfair and deceptive in that PointsBet used and employed concealment, suppression, and omission of material facts as to the nature of their promotion.

374. Additionally, PointsBet's conduct was unlawful.

375. A company doing business in Illinois violates the Illinois Consumer Fraud and Deceptive Business Practices Act when it engages in any deceptive trade practice enumerated within the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. §510/2, by doing any of the following in course of business:

    a.   Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;

    b.   Advertises goods or services with intent not to sell them as advertised; or

    c.   Engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

376.    PointsBet has, for a period of months, advertised to consumers its "risk-free" offers, including "refunds," despite having no intention of honoring this advertising.

377.    PointsBet's advertisements violate Illinois law in that its advertisements represents that its promotion contains characteristics that it does not actually have—specifically, that consumers will receive "free bets," can place bets that are "risk-free," and that such bets are refundable.

378.    PointsBet advertised its promotion with the intent not to sell its services as advertised.

379.    PointsBet's advertisements and its promotion itself created a likelihood of confusion and misunderstanding.

380.    Users who placed bets did not receive refunds.

381.    Users who placed bets instead received credits, the value of which was not disclosed.

382.    The bets themselves were not "risk-free."

383.    Users' ability to recover any portion of their lost funds was contingent upon their use of and success in placing "free bets," a condition that was not disclosed at the time of the

advertisement or when consumers entered into the transaction.

384.    PointsBet failed to disclose the full terms of its promotional program, in an effort to entice consumers to sign up on its platform who would not have signed up if they had realized that the "risk-free" offer would not allow them to obtain refunds.

385.    Information regarding the retail value of "free bet credits" was not disclosed, nor was it apparent that these would have no cash value and would expire within 30 days.

386.    PointsBet's representations and omissions were material because they were likely to deceive reasonable consumers about the nature of PointsBet's "risk-free" offer, inducing them into spending money and placing bets on its platform.

387.    PointsBet intended to mislead Plaintiff Nathan and the other Illinois Subclass members and induced them to rely on PointsBet's misrepresentations and omissions.

388.    Had Plaintiff Nathan and the other Illinois Subclass members known the truth about PointsBet's offer terms, they would not have created accounts with PointsBet or placed bets on its platform.

389.    PointsBet engaged in the above unfair and deceptive acts or practices in the course of its business.

390.    PointsBet engaged in the above unfair and deceptive acts or practices with malice and/or willfulness.

391.    As a direct and proximate result of PointsBet's unfair and deceptive practices, Plaintiff Nathan and the Illinois Subclass suffered injuries in the form of monetary losses when they failed to receive refunds for bets they placed in reliance on PointsBet's promotional offerings.

392.    The above unfair and deceptive practices and acts by PointsBet were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff Nathan

and the Illinois Subclass that they could not reasonably avoid, even by attempting to specifically review PointsBet's referenced (but unavailable) terms and conditions as associated with its promotions.

393.    PointsBet knew or should have known that its misrepresentations and omissions would deceive Plaintiff Nathan and the Illinois Subclass. PointsBet's actions in engaging in the above-named unfair practices and deceptive acts were willful, intention, and/or done with reckless indifference with respect to the rights of Plaintiff Nathan and the Illinois Subclass.

394.    Plaintiff Nathan and the Illinois Subclass seek relief under the Illinois Consumer Protection and Deceptive Business Practices Act, including (but not limited to) actual damages, compensatory damages, statutory damages, restitution, penalties, injunctive relief, punitive damages, and/or attorney's fees and costs.

### ELEVENTH CLAIM FOR RELIEF

### Negligent Misrepresentation (under Illinois common law)

### (By Keith Nathan, individually, and on behalf of the Illinois Subclass)

395.    Plaintiff Nathan incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

396.    Plaintiff Nathan brings this claim against PointsBet under Illinois common law, on behalf of himself and the Illinois Subclass.

397.    PointsBet advertised to consumers that the bets they placed in accordance with its promotional offer would be "risk free" and would provide them with a "refund."

398.    These representations were false.

399.    These representations were material, in that a reasonable viewer would rely on them when deciding to proceed with creating a PointsBet account and placing a bet in reliance on the

promotion.

400.    PointsBet owed a duty not to mislead its customers and the public at large with its advertisements.

401.    PointsBet breached this duty by telling consumers its promotion would allow them to place "risk free" bets that would afford them "refunds" when, in actuality, that was untrue.

402.    At all relevant times when such misrepresentations were made, PointsBet knew or was negligent in not knowing that these promotions were not "risk free" and that consumers would not receive "refunds." PointsBet had no reasonable grounds for believing its misrepresentations were not false or misleading and was careless and negligent in not ascertaining the truth of its misrepresentations prior to making them.

403.    PointsBet intended that Plaintiff Nathan and members of the Illinois Subclass rely on these representations, as evidenced by their use of prominent promotional advertising with almost no reference to additional terms and conditions, their failure to properly link promotional terms and conditions, and their failure to explain in detail in their general terms and conditions how free bet credits would work.

404.    Plaintiff Nathan and the Illinois Subclass relied on these misleading misrepresentations in creating PointsBet accounts and placing bets on the PointsBet platform, and had the correct facts been known, they would not have created accounts or placed bets on the platform.

405.    Thus, as a direct and proximate result of PointsBet's negligent misrepresentations, Plaintiff Nathan and the Illinois Subclass were damaged when they failed to win their "risk-free" bets but nevertheless lost some or all of the money they initially used to place the "risk-free" bets in the first place.

406.    Plaintiff Nathan and the Illinois Subclass seek relief for their injuries in an amount to be proven at trial, including (but not limited to) for compensatory damages and costs.

## TWELFTH CLAIM FOR RELIEF

### Intentional Misrepresentation (under Illinois common law)

### (By Keith Nathan, individually, and on behalf of the Illinois Subclass)

407.    Plaintiff Nathan incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

408.    Plaintiff Nathan brings this claim against PointsBet under Illinois common law, on behalf of himself and the Illinois Subclass.

409.    PointsBet advertised its sign-up offers in a manner indicating that bets placed in reliance thereon would be "risk free" and that users would receive a "refund." However, the promotions do indeed carry a risk of loss and users receive only non-transferable vouchers with no cash value that may never allow them to recoup their initial losses. Therefore, PointsBet has made misrepresentations as to the promotional offers.

410.    PointsBet's misrepresentations regarding these promotional offers are material to the reasonable consumer because they relate to the characteristics, nature, and value of the services provided, as well as of the advertised offer. A reasonable consumer would attach importance to such representations and would be induced to act thereon in making the decision to place bets on the PointsBet platform in reliance on the same.

411.    At all relevant times when such misrepresentations were made, PointsBet knew that the representations were misleading, or has acted recklessly in making the representations, without regard to the truth.

412.    PointsBet intended that Plaintiff Nathan and members of the Illinois Subclass rely

on these representations and act, as evidenced by the following:

    k.  The graphical design of its offers, which loudly proclaim the offers to be "risk free," often without any asterisks or adjacent disclosures to indicate that any other terms and conditions apply;

    l.  Its use of "T&C" to denote "terms and conditions";

    m.  The fact that its general terms and conditions do not include an explanation of how free bets work;

    n.  The miniscule, low-contrast font to draw consumer attention away from any suggestion that additional terms apply;

    o.  The complete inaccessibility of the promotional terms and conditions to consumers prior to June 2022;

    p.  The use of "risk-free" language to describe a scenario where consumers may, indeed, lose their money entirely;

    q.  The misuse of "refund" to describe the provision of a valueless free bet credit with no cash value;

    r.  The failure to make mandatory disclosures required under Colorado and Illinois law regarding these promotional credits;

    s.  The failure to disclose the expiration date for these promotional credits; and

    t.  PointsBet's own statements regarding the aggressively competitive market for sports betting companies and its need to deploy strategies to prevent consumers from migrating to a competitor.

413.   Plaintiff Nathan and the Illinois Subclass reasonably and justifiably relied on PointsBet's intentional misrepresentations when placing bets via its promotions. Among other

things, this reliance was justified because consumers were entitled to understand that these advertisements would comply with applicable law.

414.     Had they known the truth, Plaintiff Nathan and members of the Illinois Subclass would not have placed bets in the first place, particularly bets that otherwise would bear a high risk of loss.

415.     Therefore, as a direct and proximate result of PointsBet's intentional misrepresentations, Plaintiff Nathan and members of the Illinois Subclass have suffered economic losses and other general and specific damages, including but not limited to the amounts paid to PointsBet for placing bets in the first place, as well as losses associated with any subsequent bets placed in an effort to recover their original funds.

**THIRTEENTH CLAIM FOR RELIEF**

**Fraudulent Inducement (under Illinois common law)**

**(By Keith Nathan, individually, and on behalf of the Illinois Subclass)**

416.     Plaintiff Nathan incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

417.     Plaintiff Nathan brings this claim against PointsBet individually and on behalf of the members of the Illinois Subclass.

418.     PointsBet misrepresented multiple material facts about its promotional offers, as described throughout this Complaint. Specifically, it misrepresented the "risk-free" nature of bets placed in reliance on its promotions, misrepresented the availability of "refunds," misrepresented the nature of "free bet credits," misrepresented the fact that consumers could, in fact, lose the entire amount wagered in reliance on the promotion, and failed to make legally required disclosures about the nature of the promotion, the expiration of the free bet credits, the fact that free bet credits had

no cash value and could not be transferred or redeemed for cash, and the fact that consumers would be required to place a second round of bets in order to attempt to recover the amounts lost in their initial wagers.

419.    Plaintiff Nathan and the Illinois Subclass relied on PointsBet's representations and omissions in creating accounts on PointsBet and in placing wagers on the platform in reliance on the promotion.

420.    Plaintiff Nathan and the Illinois Subclass were justified in so relying, because they were entitled to believe that PointsBet would not violate the law by failing to make requisite disclosures to its consumers, or to misrepresent the nature of its advertised offers.

421.    At the time PointsBet made these misrepresentations to consumers, it knew them to be false.

422.    At the time PointsBet made these misrepresentations to consumers, it had no present intent to fulfil the terms of the promotional offer as advertised to consumers.

423.    As a result of PointsBet's misrepresentations, Plaintiff Nathan and members of the Illinois Subclass sustained monetary damages amounting to the total losses each sustained in reliance on placing "risk free" bets.

424.    Absent these misrepresentations, Plaintiff Nathan and the Illinois Subclass would not have created accounts or placed bets on the PointsBet platform.

425.    Therefore, as a direct and proximate result of PointsBet's intentional misrepresentations, Plaintiff Nathan and members of the Illinois Subclass have suffered economic losses and other general and specific damages, including, but not limited to, the amounts paid to PointsBet for placing bets in the first place, as well as losses associated with any subsequent bets placed in an effort to recover their original funds.

## FOURTEENTH CLAIM FOR RELIEF

### Quasi Contract/Unjust Enrichment/Restitution (under Illinois common law)

### (By Keith Nathan, individually, and on behalf of the Illinois Subclass)

426.    Plaintiff Nathan incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

427.    Plaintiff Nathan brings this claim against PointsBet individually and on behalf of the members of the Illinois Subclass.

428.    As alleged herein, PointsBet has intentionally and/or recklessly made misleading misrepresentations to Plaintiff Nathan and the Illinois Subclass to induce them to create accounts and place bets on its platform.

429.    Plaintiff Nathan and the Illinois Subclass have reasonably relied on these misleading representations and have not received the benefits promised by PointsBet.

430.    Plaintiff Nathan and the Illinois Subclass therefore have been induced by PointsBet's misleading and deceptive representations about the promotional offers, and paid more money to PointsBet to place bets than they otherwise would and/or should have paid.

431.    Plaintiff Nathan and the Illinois Subclass have conferred a benefit upon PointsBet as PointsBet has retained monies paid to them by Plaintiff and the Illinois Subclass.

432.    The money PointsBet received was obtained under circumstances that were at the expense and to the detriment of Plaintiff Nathan and the members of the Illinois Subclass; *i.e.*, Plaintiff Nathan and the members of the Illinois Subclass did not receive the full value of the benefit conferred upon PointsBet.

433.    Therefore, it is inequitable and unjust for PointsBet to retain the profit, benefit, or compensation conferred upon it without paying Plaintiff Nathan and the Illinois Subclass back for

the difference of the full value of the benefits compared to the value actually received. PointsBet's retention of the benefit violates fundamental principles of justice, equity, and good conscience.

434.    As a direct and proximate result of PointsBet's unjust enrichment, Plaintiff Nathan and members of the Illinois Subclass are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by PointsBet from its deceptive, misleading, and unlawful conduct as alleged herein.

### FIFTEENTH CLAIM FOR RELIEF

### Negligence (under Illinois common law)

### (By Keith Nathan, individually, and on behalf of the Illinois Subclass)

435.    Plaintiffs incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

436.    PointsBet advertised to consumers that the bets they placed in accordance with its promotional offer would be "risk free" and would provide them with a "refund."

437.    These representations were false. The bets were not risk-free. There was significant risk involved that consumers would lose their money altogether. At minimum, they would have to place long-odds bets in order to recover the money they lost if they lost their initial bets, but PointsBet did not convey that part, instead relying on its "risk-free" messaging.

438.    PointsBet owed a duty not to mislead its customers and the public at large with its advertisements. PointsBet on the one hand and Plaintiff Nathan and the Illinois Subclass on the other hand stood in such a relationship to one another that the law imposed upon PointsBet an obligation of reasonable conduct for the benefit of Plaintiff Nathan and the Illinois Subclass, particularly in this situation given the reasonable foreseeability of injury caused by PointsBet's misrepresentations, the significant likelihood of injury to Plaintiff Nathan and the Illinois Subclass,

and the minimal burden and consequence of PointsBet in preventing such an injury,

439.    By advertising its promotions and services as being "risk free" when, in fact, they were not, PointsBet breached this duty of care.

440.    As a result, Plaintiff Nathan and the Illinois Subclass were damaged when they engaged in activities laden with risk after being informed by PointsBet there would be no risk involved as a result of its promotion.

441.    As a result, Plaintiff Nathan and the Illinois Subclass lost money and were damaged

442.    At all relevant times when such misrepresentations were made, PointsBet knew or was negligent in not knowing that these promotions were not "risk free" and that consumers would not receive "refunds." PointsBet had no reasonable grounds for believing its misrepresentations were not false or misleading.

443.    Thus, as a direct and proximate result of PointsBet's negligence, Plaintiff Nathan and the Illinois Subclass were damaged in that they created accounts they would not otherwise have created and, furthermore, failed to win their "risk-free" bets but nevertheless lost some or all of the money they initially used to place the "risk-free" bets in the first place.

444.    Plaintiff Nathan the Illinois Subclass seek relief for their injuries in an amount to be proven at trial, including (but not limited to) for compensatory damages and costs.

## SIXTEENTH CLAIM FOR RELIEF

### Violation of the Iowa Consumer Fraud Act, Iowa Code §714.16, *et seq.*

### (By Plaintiff Kyle Johnson, individually and on behalf of the Iowa Subclass)

445.    Plaintiff Kyle Johnson incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

446.    Plaintiff Kyle Johnson brings this claim against PointsBet for violations of the Iowa

Consumer Fraud Act, Iowa Code §714.16, *et seq*., on behalf of himself and the Iowa Subclass.

447.   PointsBet engaged in acts or practices which cause substantial, unavoidable injuries to consumers, in that it specifically engaged in each of the following:

a.   Falsely advertising its promotion as being "risk-free" when it contained substantial risk;

b.   Suppressing information regarding the true nature of its "free bet" credits and how they worked;

c.   Advertising services "risk-free" with the intent not to sell them as advertised;

d.   Falsely making a free offer to consumers without providing clear and conspicuous information that was readily understandable and presented in such size, color, contrast, and location, so as to be readily noticeable and understood, regarding the terms of the free offer and adequate identification of the "free bet credits" to be provided;

e.   Knowingly or recklessly engaged in unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice, by luring consumers into placing "risk-free" bets that were not "risk-free" at all; and

f.   Employing "bait and switch" advertising to lure consumers in with a promise of one thing and then deliver another.

448.   These deceptive trade practices significantly impacted the public as actual or potential consumers of PointsBet's services, in that PointsBet invested heavily in advertising its "risk-free" promotions, including specific targeting of unsophisticated consumers without experience with online sports betting.

449.   Plaintiff Johnson and the Iowa Subclass were actual consumers of PointsBet's

services.

450.     As a result of PointsBet's deceptive trade practices, Plaintiff Johnson and the Iowa Subclass signed up for PointsBet's online sports betting services and placed bets, which they lost.

451.     But for PointsBet's deceptive trade practices, Plaintiff Johnson and the Iowa Subclass would not have signed up for PointsBet's services, and therefore would not have been damaged.

452.     In committing these deceptive trade practices, PointsBet has acted with willful and wanton disregard for the rights of safety of Plaintiff Johnson's rights and those of the Iowa Subclass.

453.     Accordingly, Plaintiff Johnson and the Iowa Subclass seek injunctive relief to prevent PointsBet from engaging in similarly deceptive conduct in the future.

454.     Additionally, Plaintiff Johnson and the Iowa Subclass seek their actual damages.

455.     Plaintiff Johnson and the Iowa Subclass seek treble damages.

456.     Plaintiff Johnson and the Iowa Subclass seek costs and reasonable attorney fees.

**SEVENTEENTH CLAIM FOR RELIEF**

**Intentional Misrepresentation (under Iowa common law)**

**(By Kyle Johnson, individually, and on behalf of the Iowa Subclass)**

457.     Plaintiff Johnson incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

458.     Plaintiff Johnson brings this claim against PointsBet individually and on behalf of the members of the Iowa Subclass.

459.     PointsBet advertised its sign-up offers in a manner indicating that bets placed in reliance thereon would be "risk free" and that users would receive a "refund." However, the

promotions do indeed carry a risk of loss and users receive only non-transferable vouchers with no cash value, require users to place another round of bets, and may never allow them to recoup their initial losses. Therefore, PointsBet has made misrepresentations as to the promotional offers—they carry significant risk.

460.    PointsBet's misrepresentations regarding these promotional offers are material to the reasonable consumer because they relate to the characteristics, nature, and value of the services provided, as well as of the advertised offer. A reasonable consumer would attach importance to such representations and would be induced to act thereon in making the decision to place bets on the PointsBet platform in reliance on the same.

461.    PointsBet has also engaged in misrepresentation by concealment in that it has failed to disclose material information regarding the nature of its "risk-free" betting promotion, with the intent that this induce consumers to rely on the same, knowing that by omitting information about the nature of its promotion it would induce consumers to sign up for PointsBet accounts for which they would not ordinarily be likely to sign up.

462.    At all relevant times when such misrepresentations were made, PointsBet knew that the representations were misleading, or has acted recklessly in making the representations, without regard to the truth.

463.    Indeed, since the time this lawsuit was filed, PointsBet has altered its advertising and promotions; it now advertises "second chance betting" as opposed to "risk-free betting."

464.    PointsBet intends that Plaintiff and other consumers rely on these representations, as evidenced by the following:

      a.    The graphical design of its offers, which loudly proclaim the offers to be "risk free," often without any asterisks or adjacent disclosures to indicate that any

other terms and conditions apply;

b. Its use of "T&C" to denote "terms and conditions";

c. The fact that its general terms and conditions do not include an explanation of how free bets work;

d. The miniscule, low-contrast font to draw consumer attention away from any suggestion that additional terms apply;

e. The complete inaccessibility of the promotional terms and conditions to consumers prior to June 2022;

f. The use of "risk-free" language to describe a scenario where consumers may, indeed, lose their money entirely;

g. The misuse of "refund" to describe the provision of a valueless free bet credit with no cash value;

h. The failure to make mandatory disclosures required under Colorado law regarding these promotional credits;

i. The failure to disclose the expiration date for these promotional credits; and

j. PointsBet's own statements regarding the aggressively competitive market for sports betting companies and its need to deploy strategies to prevent consumers from migrating to a competitor.

465.    Plaintiff and the Class reasonably and justifiably relied on PointsBet's intentional misrepresentations when enrolling in accounts and placing bets via its promotions. Among other things, this reliance was justified because consumers were entitled to understand that these advertisements would comply with applicable law.

466.    Had they known the truth, Plaintiff and the Class would not have created accounts

or placed bets in the first place, particularly bets that otherwise would bear a high risk of loss.

467.    Therefore, as a direct and proximate result of PointsBet's intentional misrepresentations, Plaintiff and members of the Class have suffered privacy and economic losses and other general and specific damages, including but not limited to: sharing significant personal information with PointsBet; the amounts paid to PointsBet for placing bets in the first place, mental health consequences associated with engaging in subsequent rounds of unanticipated additional addictive gambling activities; as well as losses associated with any subsequent bets placed in an effort to recover their original funds.

468.    Plaintiff Johnson and the Iowa Subclass seek their actual damages.

469.    Plaintiff Johnson and the Iowa Subclass seek treble damages.

470.    Plaintiff Johnson and the Iowa Subclass seek costs and reasonable attorney fees.

**EIGHTEENTH CLAIM FOR RELIEF**

**Violation of the Virginia Consumer Protection Act, Va. Code Ann. §59.1-196, *et seq.***

**(By Plaintiff Eric Spivack, individually and on behalf of the Virginia Subclass)**

471.    Plaintiff Eric Spivack incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

472.    Plaintiff Eric Spivack brings this claim against PointsBet for violations of the Virginia Consumer Protection Act, Va. Code Ann. §59.1-196, *et seq.*, on behalf of himself and the Virginia Subclass.

473.    Each PointsBet entity is a "person" as defined in Va. Code. Ann. §59.1-198.

474.    Plaintiff Spivack and each member of the Virginia Subclass is a "person" as defined Va. Code. Ann. §59.1-198, or are successors in interest to actual persons as defined in Va. Code. Ann. §59.1-198

475.    The circumstances that relate to the consumer transactions giving rise to this claim occurred primarily and substantially in Virginia because PointsBet caused to be disseminated throughout the commonwealth of Virginia through advertising, marketing, and other publications, statements that were deceptive and misleading, and which it knew were untrue and misleading.

476.    PointsBet's conduct was unfair and deceptive in that PointsBet intentionally and knowingly made false representations of material facts as to the nature of their promotion with the intent to mislead Plaintiff Spivack and members of the Virginia Subclass.

477.    Additionally, PointsBet's conduct was unlawful.

478.    A company doing business in Virginia violates the Virginia Consumer Protection Act when it engages in any deceptive trade practice enumerated within the Illinois Uniform Deceptive Trade Practices Act, Va. Code. Ann. §59.1-200, by doing any of the following in connection with a consumer transaction:

      a.    Misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits;

      b.    Advertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised; or

      c.    Using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction.

479.    Additionally, the Virginia Administrative Code, 11 VAC §5-80-150, requires that, with regard to advertisements for sports betting, any representation concerning winnings:

      a.    Shall be accurate and capable of substantiation at the time the representation is made;

      b.    Shall not mislead bettors about the outcomes of gambling; and

      c.   Shall not misrepresent the odds of winning.

480.    Additionally, the Virginia Administrative Code, 11 VAC §5-80-140(A), requires that:

      a.   A permit holder shall fully and accurately disclose the material terms of all promotional offers involving sports betting at the time any such offer is advertised and provide full disclosure of the terms of and limitations on the offer before the sports bettor provides anything of value in exchange for the offer. If the material terms of a promotional offer cannot be fully and accurately disclosed within the constraints of a particular advertising medium, the material terms and conditions shall be accessed by hyperlink that takes the individual directly to the material terms or directs the individual to the site to access the offer or bonus terms and in reasonably prominent size.

481.    PointsBet has, for a period of months, advertised to consumers its "risk-free" offers, including "refunds," despite having no intention of honoring this advertising.

482.    PointsBet's advertising specifically violates Virginia law, as described above, in that its advertising misrepresents that its promotion contains characteristics and benefits that it does not actually have. Specifically, that consumers will receive "free bets", can place bets that are "risk-free", and that such bets are refundable.

483.    PointsBet advertised its promotion with the intent neither to sell its services as advertised nor upon the terms advertised.

484.    PointsBet's advertising used deception, fraud, false pretense, false promise, and misrepresentation in connection with the promotion.

485.     PointsBet's advertising and promotion contained representations about winnings that were not accurate and capable of substantiation at the time the representation was made and misled betters of about the outcomes of placing bets with the promotion.

486.     Specifically, users who placed bets did not receive refunds.

487.     Users who placed bets instead received credits, the value of which was not disclosed.

488.     Additionally, the bets themselves were not "risk-free."

489.     Users' ability to recover any portion of their lost funds was contingent upon their use of and success from placing "free bets," a condition that was not disclosed at the time of the advertisement or when consumers entered into the transaction.

490.     PointsBet failed to disclose the full terms of its promotional program, in an effort to entice consumers to sign up on its platform who would not have if they had realized that the "risk-free" offer would not allow them to obtain refunds.

491.     Information regarding the retail value of "free bet credits" was not disclosed, nor was it apparent that these would have no cash value and would expire within 30 days.

492.     PointsBet's representations and omissions were material because they were likely to deceive reasonable consumers about the nature of PointsBet's "risk-free" offer, inducing them into spending money and placing bets on its platform.

493.     PointsBet intended to mislead Plaintiff Spivack and the other Virginia Subclass members and induced them to rely on PointsBet's misrepresentations and omissions.

494.     Had Plaintiff Spivack and the other Virginia Subclass members known the truth about PointsBet's offer terms, they would not have created accounts with PointsBet or placed bets on its platform.

495.     These deceptive trade practices significantly impacted the public as actual or potential consumers of PointsBet's services, in that PointsBet invested heavily in advertising its "risk-free" promotions, including specific targeting of unsophisticated consumers without experience with online sports betting.

496.     PointsBet engaged in the above unfair and deceptive acts or practices in connection with a commercial transaction.

497.     PointsBet engaged in the above unfair and deceptive acts or practices with malice and/or willfulness.

498.     As a direct and proximate result of PointsBet's unfair and deceptive practices, Plaintiff Spivack and the Virginia Subclass suffered injuries in the form of monetary losses when they failed to receive refunds for bets they placed in reliance on PointsBet's promotional offerings.

499.     As a result of PointsBet's misrepresentations and deceptive trade practices, Plaintiff Spivack and the Virginia Subclass signed up for PointsBet's online sports betting services and placed bets, which they lost.

500.     But for PointsBet's deceptive trade practices, Plaintiff Spivack and the Virginia Subclass would not have signed up for PointsBet's services, and therefore would not have been damaged.

501.     The above unfair and deceptive practices and acts by PointsBet were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff Spivack and the Virginia Subclass that they could not reasonably avoid, even by attempting to specifically review PointsBet's referenced (but unavailable) terms and conditions as associated with its promotions.

502.     PointsBet knew or should have known that its misrepresentations and omissions

would deceive Plaintiff Spivack and the Virginia Subclass. PointsBet's actions in engaging in the above-named unfair practices and deceptive acts were willful, intention, and/or done with reckless indifference with respect to the rights of Plaintiff Spivack and the Virginia Subclass.

503.    Plaintiff Spivack and the Virginia Subclass seek relief under the Virginia Consumer Protection Act, including (but not limited to) actual damages, compensatory damages, statutory damages, restitution, penalties, injunctive relief, punitive damages, and/or attorney's fees and costs.

## NINETEENTH CLAIM FOR RELIEF

### Intentional Misrepresentation (under Virginia common law)

### (By Eric Spivack, individually, and on behalf of the Virginia Subclass)

504.    Plaintiff Spivack incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

505.    Plaintiff Spivack brings this claim against PointsBet under Virginia common law, on behalf of himself and the Illinois Subclass.

506.    PointsBet advertised its sign-up offers in a manner indicating that bets placed in reliance thereon would be "risk free" and that users would receive a "refund." However, the promotions do indeed carry a risk of loss and users receive only non-transferable vouchers with no cash value that may never allow them to recoup their initial losses. Therefore, PointsBet has made misrepresentations as to the promotional offers.

507.    PointsBet's misrepresentations regarding these promotional offers are material to the reasonable consumer because they relate to the characteristics, nature, and value of the services provided, as well as of the advertised offer. A reasonable consumer would attach importance to such representations and would be induced to act thereon in making the decision to place bets on

the PointsBet platform in reliance on the same.

508.   At all relevant times when such misrepresentations were made, PointsBet knew that the representations were misleading, or has acted recklessly in making the representations, without regard to the truth.

509.   PointsBet intended that Plaintiff Spivack and members of the Virginia Subclass rely on these representations and act, as evidenced by the following:

u.   The graphical design of its offers, which loudly proclaim the offers to be "risk free," often without any asterisks or adjacent disclosures to indicate that any other terms and conditions apply;

v.   Its use of "T&C" to denote "terms and conditions";

w.   The fact that its general terms and conditions do not include an explanation of how free bets work;

x.   The miniscule, low-contrast font to draw consumer attention away from any suggestion that additional terms apply;

y.   The complete inaccessibility of the promotional terms and conditions to consumers prior to June 2022;

z.   The use of "risk-free" language to describe a scenario where consumers may, indeed, lose their money entirely;

aa. The misuse of "refund" to describe the provision of a valueless free bet credit with no cash value;

bb. The failure to make mandatory disclosures required under Colorado and Virginia law regarding these promotional credits;

cc. The failure to disclose the expiration date for these promotional credits; and

dd. PointsBet's own statements regarding the aggressively competitive market for sports betting companies and its need to deploy strategies to prevent consumers from migrating to a competitor.

510.    Plaintiff Spivack and the Virginia Subclass reasonably and justifiably relied on PointsBet's intentional misrepresentations when placing bets via its promotions. Among other things, this reliance was justified because consumers were entitled to understand that these advertisements would comply with applicable law.

511.    Had they known the truth, Plaintiff Spivack and members of the Virginia Subclass would not have placed bets in the first place, particularly bets that otherwise would bear a high risk of loss.

512.    Therefore, as a direct and proximate result of PointsBet's intentional misrepresentations, Plaintiff Spivack and members of the Virginia Subclass have suffered economic losses and other general and specific damages, including but not limited to the amounts paid to PointsBet for placing bets in the first place, as well as losses associated with any subsequent bets placed in an effort to recover their original funds.

## TWENTIETH CLAIM FOR RELIEF

### Fraudulent Inducement (under Virginia common law)

### (By Eric Spivack, individually, and on behalf of the Virginia Subclass)

513.    Plaintiff Spivack incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

514.    Plaintiff Spivack brings this claim against PointsBet individually and on behalf of the members of the Virginia Subclass.

515.    PointsBet misrepresented multiple material facts about its promotional offers, as

described throughout this Complaint. Specifically, it misrepresented the "risk-free" nature of bets placed in reliance on its promotions, misrepresented the availability of "refunds," misrepresented the nature of "free bet credits," misrepresented the fact that consumers could, in fact, lose the entire amount wagered in reliance on the promotion, and failed to make legally required disclosures about the nature of the promotion, the expiration of the free bet credits, the fact that free bet credits had no cash value and could not be transferred or redeemed for cash, and the fact that consumers would be required to place a second round of bets in order to attempt to recover the amounts lost in their initial wagers.

516.    Plaintiff Spivack and the Virginia Subclass relied on PointsBet's representations and omissions in creating accounts on PointsBet and in placing wagers on the platform in reliance on the promotion.

517.    Plaintiff Spivack and the Virginia Subclass were justified in so relying, because they were entitled to believe that PointsBet would not violate the law by failing to make requisite disclosures to its consumers, or to misrepresent the nature of its advertised offers.

518.    At the time PointsBet made these misrepresentations to consumers, it knew them to be false.

519.    At the time PointsBet made these misrepresentations to consumers, it had no present intent to fulfil the terms of the promotional offer as advertised to consumers.

520.    As a result of PointsBet's misrepresentations, Plaintiff Spivack and members of the Virginia Subclass sustained monetary damages amounting to the total losses each sustained in reliance on placing "risk free" bets.

521.    Absent these misrepresentations, Plaintiff Spivack and the Virginia Subclass would not have created accounts or placed bets on the PointsBet platform.

522.     Therefore, as a direct and proximate result of PointsBet's intentional misrepresentations, Plaintiff Spivack and members of the Virginia Subclass have suffered economic losses and other general and specific damages, including, but not limited to, the amounts paid to PointsBet for placing bets in the first place, as well as losses associated with any subsequent bets placed in an effort to recover their original funds.

## TWENTY-FIRST CLAIM FOR RELIEF

### Quasi Contract/Unjust Enrichment/Restitution (under Virginia common law)

### (By Eric Spivack, individually, and on behalf of the Virginia Subclass)

523.     Plaintiff Spivack incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

524.     Plaintiff Spivack brings this claim against PointsBet individually and on behalf of the members of the Virginia Subclass.

525.     As alleged herein, PointsBet has intentionally and/or recklessly made misleading misrepresentations to Plaintiff Spivack and the Virginia Subclass to induce them to create accounts and place bets on its platform.

526.     Plaintiff Spivack and the Virginia Subclass have reasonably relied on these misleading representations and have not received the benefits promised by PointsBet.

527.     Plaintiff Spivack and the Virginia Subclass therefore have been induced by PointsBet's misleading and deceptive representations about the promotional offers, and paid more money to PointsBet to place bets than they otherwise would and/or should have paid.

528.     Plaintiff Spivack and the Virginia Subclass have conferred a benefit upon PointsBet as PointsBet has retained monies paid to them by Plaintiff and the Virginia Subclass.

529.     The money PointsBet received was obtained under circumstances that were at the

expense and to the detriment of Plaintiff Spivack and the members of the Virginia Subclass; *i.e.*, Plaintiff Spivack and the members of the Virginia Subclass did not receive the full value of the benefit conferred upon PointsBet.

530.    Therefore, it is inequitable and unjust for PointsBet to retain the profit, benefit, or compensation conferred upon it without paying Plaintiff Spivack and the Virginia Subclass back for the difference of the full value of the benefits compared to the value actually received. PointsBet's retention of the benefit violates fundamental principles of justice, equity, and good conscience.

531.    As a direct and proximate result of PointsBet's unjust enrichment, Plaintiff Spivack and members of the Virginia Subclass are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by PointsBet from its deceptive, misleading, and unlawful conduct as alleged herein.

## TWENTY-SECOND CLAIM FOR RELIEF

### Negligence (under Virginia common law)

### (By Eric Spivack, individually, and on behalf of the Virginia Subclass)

532.    Plaintiffs incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

533.    PointsBet advertised to consumers that the bets they placed in accordance with its promotional offer would be "risk free" and would provide them with a "refund."

534.    These representations were false. The bets were not risk-free. There was significant risk involved that consumers would lose their money altogether. At minimum, they would have to place long-odds bets in order to recover the money they lost if they lost their initial bets, but PointsBet did not convey that part, instead relying on its "risk-free" messaging.

535.    PointsBet owed a duty not to mislead its customers and the public at large with its advertisements. PointsBet on the one hand and Plaintiff Spivack and the Virginia Subclass on the other hand stood in such a relationship to one another that the law imposed upon PointsBet an obligation of reasonable conduct for the benefit of Plaintiff Spivack and the Virginia Subclass, particularly in this situation given the reasonable foreseeability of injury caused by PointsBet's misrepresentations, the significant likelihood of injury to Plaintiff Spivack and the Virginia Subclass, and the minimal burden and consequence of PointsBet in preventing such an injury,

536.    By advertising its promotions and services as being "risk free" when, in fact, they were not, PointsBet breached this duty of care.

537.    As a result, Plaintiff Spivack and the Virginia Subclass were damaged when they engaged in activities laden with risk after being informed by PointsBet there would be no risk involved as a result of its promotion.

538.    As a result, Plaintiff Spivack and the Virginia Subclass lost money and were damaged

539.    At all relevant times when such misrepresentations were made, PointsBet knew or was negligent in not knowing that these promotions were not "risk free" and that consumers would not receive "refunds." PointsBet had no reasonable grounds for believing its misrepresentations were not false or misleading.

540.    Thus, as a direct and proximate result of PointsBet's negligence, Plaintiff Spivack and the Virginia Subclass were damaged in that they created accounts they would not otherwise have created and, furthermore, failed to win their "risk-free" bets but nevertheless lost some or all of the money they initially used to place the "risk-free" bets in the first place.

541.    Plaintiff Spivack the Virginia Subclass seek relief for their injuries in an amount to

be proven at trial, including (but not limited to) for compensatory damages and costs.

## TWENTY-THIRD CLAIM FOR RELIEF

**Violation of Colorado Consumer Protection Act (Colo. Rev. Stat. §§6-1-101, *et seq.*)**

**(By Plaintiff Ryan Boyle individually, and on behalf of the Colorado Subclass)**

542.     Plaintiff Ryan Boyle incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

543.     Plaintiff Boyle brings this claim against PointsBet for violation of the Colorado Consumer Protection Act, individually and on behalf of the members of the Colorado Subclass.

544.     Upon information and belief, all of PointsBet's deceptive marketing as described herein was conducted by PointsBet from within the state of Colorado.

545.     Each PointsBet entity is a "person" as defined by Colo. Rev. Stat. 601-102(6).

546.     Plaintiff Boyle as well as the Colorado Subclass and general public, are actual or potential consumers of the products and services offered by PointsBet, or are successors in interest to actual consumers.

547.     A company doing business in Colorado violates the Colorado Consumer Protection Act when it does any of the following:

e.   Advertises goods, services, or property with intent not to sell them as advertised;

f.   Employs "bait and switch" advertising, which is advertising accompanied by an effort to sell goods, services, or property other than those advertised or on terms other than those advertised, when the offer requires tie-in sales or other undisclosed conditions to be met prior to selling the advertised goods, property, or services;

g.  Fails to disclose material information concerning goods, services, or property, which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction; and

h.  Fails, in connection with any solicitation, oral or written, to clearly and prominently disclose immediately adjacent to or after the description of any item or prize to be received by any person the actual retail value of each item or prize to be awarded.

548.  PointsBet has, for a period of months, advertised to consumers its "risk-free" offers, including "refunds," despite having no intention of honoring this advertising.

549.  PointsBet's advertising specifically violates Colorado law, as described above, in that it fails to provide legally required disclosures to consumers which are essential to prevent consumer confusion.

550.  Users who placed bets did not receive refunds.

551.  Users who placed bets instead received credits, the value of which was not disclosed.

552.  The bets themselves were not "risk-free."

553.  Users' ability to recover any portion of their lost funds was contingent upon their use of and success from placing "free bets," a condition that was not disclosed at the time of the advertisement or when consumers entered into the transaction.

554.  PointsBet failed to disclose the full terms of its promotional program, in an effort to entice consumers to sign up on its platform who would not have if they had realized that the "risk-free" offer would not allow them to obtain refunds.

555.     Information regarding the retail value of "free bet credits" was not disclosed, nor
was it apparent that these would have no cash value and would expire within 30 days.

556.     PointsBet's representations and omissions were material because they were likely
to deceive reasonable consumers about the nature of PointsBet's "risk-free" offer, inducing them
into spending money and placing bets on its platform.

557.     PointsBet intended to mislead Plaintiff Boyle and the other Colorado Subclass
members and induce them to rely on PointsBet's misrepresentations and omissions.

558.     Had Plaintiff Boyle and the other Colorado Subclass members known the truth
about PointsBet's offer terms, they would not have created accounts with PointsBet or placed bets
on its platform.

559.     PointsBet engaged in the above unfair and deceptive acts or practices in the course
of its business.

560.     PointsBet engaged in the above unfair and deceptive acts or practices with malice
and/or willfulness.

561.     As a direct and proximate result of PointsBet's unfair and deceptive practices,
Plaintiff Boyle and the Colorado Subclass suffered injuries in the form of monetary losses when
they failed to receive refunds for bets they placed in reliance on PointsBet's promotional offerings.

562.     The above unfair and deceptive practices and acts by PointsBet were immoral,
unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff Boyle
and the Colorado Subclass that they could not reasonably avoid, even by attempting to specifically
review PointsBet's referenced (but unavailable) terms and conditions as associated with its
promotions.

563.     PointsBet knew or should have known that its misrepresentations and omissions

would deceive Plaintiff Boyle and the Colorado Subclass. PointsBet's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff Boyle and the Colorado Subclass.

564.     Plaintiff Boyle and the Colorado Subclass seek relief under Colorado's Consumer Protection Act, including (but not limited to) compensatory damages, statutory damages, restitution, penalties, injunctive relief, treble damages, and/or attorney's fees and costs.

## TWENTY-FOURTH CLAIM FOR RELIEF

### Negligent Misrepresentation (under Colorado common law)

### (By Plaintiff Boyle, individually, and on behalf of the Colorado Subclass)

565.     Plaintiff Boyle incorporate by reference all allegations in this Complaint and restates them as if fully set forth herein.

566.     PointsBet advertised to consumers that the bets they placed in accordance with its promotional offer would be "risk free" and would provide them with a "refund."

567.     These representations were false. The bets were not risk-free. There was significant risk involved that consumers would lose their money altogether. At minimum, they would have to place long-odds bets in order to recover the money they lost if they lost their initial bets, but PointsBet did not convey that part, instead relying on its "risk-free" messaging.

568.     PointsBet gave this information to consumers in the course of PointsBet's business, in transactions in which PointsBet had financial interest.

569.     PointsBet gave this information to consumers for use in the business transaction.

570.     PointsBet was negligent in communicating this information to consumers.

571.     PointsBet gave these representations with the intent or knowledge that its consumers would act in reliance on that information.

572.     These representations were material, in that a reasonable viewer would rely on them when deciding to proceed with creating a PointsBet account and placing a bet in reliance on the promotion.

573.     These are not statements of puffery but are statements regarding the value of the services to be provided and were representations of fact.

574.     PointsBet owed a duty not to mislead its customers and the public at large with its advertisements.

575.     PointsBet breached this duty by telling consumers its promotion would allow them to place "risk free" bets that would afford them "refunds" when, in actuality, that was untrue.

576.     At all relevant times when such misrepresentations were made, PointsBet knew or was negligent in not knowing that these promotions were not "risk free" and that consumers would not receive "refunds." PointsBet had no reasonable grounds for believing its misrepresentations were not false or misleading.

577.     PointsBet intended that Plaintiff and other consumers rely on these representations, as evidenced by their use of prominent promotional advertising with almost no reference to additional terms and conditions, their failure to properly link promotional terms and conditions, and their failure to explain in detail in their general terms and conditions how free bet credits would work.

578.     Plaintiff Boyle and the Colorado Subclass relied on these misleading misrepresentations in creating PointsBet accounts and placing bets on the PointsBet platform, and had the correct facts been known, they would not have created accounts or placed bets on the platform.

579.     Thus, as a direct and proximate result of PointsBet's negligent misrepresentations,

Plaintiff Boyle and the Colorado Subclass were damaged when they failed to win their "risk-free" bets but nevertheless lost some or all of the money they initially used to place the "risk-free" bets in the first place.

580.    Plaintiff Boyle and the Colorado Subclass seek relief for their injuries in an amount to be proven at trial, including (but not limited to) for compensatory damages and costs.

## TWENTY-FIFTH CLAIM FOR RELIEF

### Intentional Misrepresentation (under Colorado common law)

### (By Plaintiff Boyle, individually, and on behalf of the Colorado Subclass)

581.    Plaintiff Boyle incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

582.    PointsBet advertised its sign-up offers in a manner indicating that bets placed in reliance thereon would be "risk free" and that users would receive a "refund." However, the promotions do indeed carry a risk of loss and users receive only non-transferable vouchers with no cash value, require users to place another round of bets, and may never allow them to recoup their initial losses. Therefore, PointsBet has made misrepresentations as to the promotional offers—they carry significant risk.

583.    PointsBet's misrepresentations regarding these promotional offers are material to the reasonable consumer because they relate to the characteristics, nature, and value of the services provided, as well as of the advertised offer. A reasonable consumer would attach importance to such representations and would be induced to act thereon in making the decision to place bets on the PointsBet platform in reliance on the same

584.    PointsBet has also engaged in misrepresentation by concealment in that it has failed to disclose material information regarding the nature of its "risk-free" betting promotion, with the

intent that this induce consumers to rely on the same, knowing that by omitting information about the nature of its promotion it would induce consumers to sign up for PointsBet accounts for which they would not ordinarily be likely to sign up.

585.  At all relevant times when such misrepresentations were made, PointsBet knew that the representations were misleading, or has acted recklessly in making the representations, without regard to the truth.

586.  Indeed, since the time this lawsuit was filed, PointsBet has altered its advertising and promotions; it now advertises "second chance betting" as opposed to "risk-free betting."

587.  PointsBet intends that Plaintiff Boyle and other consumers rely on these representations, as evidenced by the following:

k.  The graphical design of its offers, which loudly proclaim the offers to be "risk free," often without any asterisks or adjacent disclosures to indicate that any other terms and conditions apply;

l.  Its use of "T&C" to denote "terms and conditions";

m.  The fact that its general terms and conditions do not include an explanation of how free bets work;

n.  The miniscule, low-contrast font to draw consumer attention away from any suggestion that additional terms apply;

o.  The complete inaccessibility of the promotional terms and conditions to consumers prior to June 2022;

p.  The use of "risk-free" language to describe a scenario where consumers may, indeed, lose their money entirely;

q.  The misuse of "refund" to describe the provision of a valueless free bet credit

with no cash value;

r.  The failure to make mandatory disclosures required under Colorado law regarding these promotional credits;

s.  The failure to disclose the expiration date for these promotional credits; and

t.  PointsBet's own statements regarding the aggressively competitive market for sports betting companies and its need to deploy strategies to prevent consumers from migrating to a competitor.

588.  Plaintiff Boyle and the Colorado Subclass reasonably and justifiably relied on PointsBet's intentional misrepresentations when placing bets via its promotions. Among other things, this reliance was justified because consumers were entitled to understand that these advertisements would comply with applicable law.

589.  Had they known the truth, Plaintiff Boyle and the Colorado Subclass would not have placed bets in the first place, particularly bets that otherwise would bear a high risk of loss.

590.  Therefore, as a direct and proximate result of PointsBet's intentional misrepresentations, Plaintiff Boyle and members of the Colorado Subclass have suffered privacy and economic losses and other general and specific damages, including but not limited to: sharing significant personal information with PointsBet; the amounts paid to PointsBet for placing bets in the first place, mental health consequences associated with engaging in subsequent rounds of unanticipated additional addictive gambling activities; as well as losses associated with any subsequent bets placed in an effort to recover their original funds.

//

//

//

## TWENTY-SIXTH CLAIM FOR RELIEF

### Negligence (under Colorado common law)

### (By Plaintiff Boyle Eric Gutman, Ryan Boyle, Keith Nathan, Kyle Johnson, and Eric Spivack, individually, and on behalf of the Colorado Subclass)

591.    Plaintiff Boyle incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

592.    PointsBet advertised to consumers that the bets they placed in accordance with its promotional offer would be "risk free" and would provide them with a "refund."

593.    These representations were false. The bets were not risk-free. There was significant risk involved that consumers would lose their money altogether. At minimum, they would have to place long-odds bets in order to recover the money they lost if they lost their initial bets, but PointsBet did not convey that part, instead relying on its "risk-free" messaging.

594.    PointsBet owed a duty not to mislead its customers and the public at large with its advertisements.

595.    Specifically, Colorado sports betting companies have a duty under Colorado regulations not to describe gambling activities as "risk free" when there is potential risk involved. *See* 1 CCR 207-2 Rule 9.4(b)-(c).

596.    By advertising its promotions and services as being "risk free" when, in fact, they were not, PointsBet breached this duty of care.

597.    As a result, Plaintiff Boyle and the Colorado Subclass were damaged when they engaged in activities laden with risk after being informed by PointsBet there would be no risk involved as a result of its promotion.

598.    As a result, Plaintiff Boyle and the Colorado Subclass lost money and were

damaged

599.    At all relevant times when such misrepresentations were made, PointsBet knew or was negligent in not knowing that these promotions were not "risk free" and that consumers would not receive "refunds." PointsBet had no reasonable grounds for believing its misrepresentations were not false or misleading.

600.    Thus, as a direct and proximate result of PointsBet's negligence, Plaintiff Boyle and the Colorado Subclass were damaged in that they created accounts they would not otherwise have created and, furthermore, failed to win their "risk-free" bets but nevertheless lost some or all of the money they initially used to place the "risk-free" bets in the first place.

601.    Plaintiff Boyle the Colorado Subclass seek relief for their injuries in an amount to be proven at trial, including (but not limited to) for compensatory damages and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully requests judgment as follows:

1.  That the case be certified as a class action on behalf of the Class as identified above, appoint Plaintiffs as Class representatives, and appoint their counsel as Class counsel;

2.  The New York Subclass be certified as identified above, appoint Plaintiff Eric Gutman as the New York Subclass representative, and appoint his counsel as the New York Subclass Counsel.

3.  The Illinois Subclass be certified as identified above, appoint Plaintiff Keith Nathan as the Illinois Subclass representative, and appoint his counsel as the Illinois Subclass Counsel.

4.  The Iowa Subclass be certified as identified above, appoint Plaintiff Kyle Johnson as the Iowa Subclass representative, and appoint his counsel as the Illinois Subclass

Counsel.

5. The Virginia Subclass be certified as identified above, appoint Plaintiff Eric Spivack as the Virginia Subclass representative, and appoint his counsel as the Virginia Subclass Counsel.

6. The Colorado Subclass be certified as identified above, appoint Plaintiff Ryan Boyle as the Colorado Subclass representative, and appoint his counsel as the Colorado Subclass Counsel.

7. A declaration that Defendants' actions, as described herein, violate the law as described herein;

8. An award of injunctive and other equitable relief as necessary to protect the interests of Plaintiff and the Class, including an order prohibiting Defendants from engaging in the unlawful acts described above;

9. An award to Plaintiff and the proposed Class of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiff and the proposed Class as a result of their unlawful, unfair, and fraudulent business practices as described herein;

10. An award of all economic, monetary, actual, consequential, compensatory, and treble damages caused by Defendants' conduct;

11. An award of punitive damages;

12. An award to of reasonable expenses of attorney's fees;

13. An award of pre and post-judgment interest, to the extent allowable; and

14. For such further relief that the Court may deem just and proper.

Respectfully Submitted,

DATED: January 17, 2023                     **KRONENBERGER ROSENFELD, LLP**

By: _____s/ Karl S. Kronenberger_____

**Karl S. Kronenberger**
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
E-mail: karl@kr.law

Attorneys for Plaintiffs

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial of this action by jury.


Respectfully Submitted,

DATED: January 17, 2023                         **KRONENBERGER ROSENFELD, LLP**

                                                By: _____ s/ Karl S. Kronenberger _____

                                                **Karl S. Kronenberger**
                                                150 Post Street, Suite 520
                                                San Francisco, CA 94108
                                                Telephone: (415) 955-1155
                                                Facsimile: (415) 955-1158
                                                E-mail: karl@kr.law

                                                Attorneys for Plaintiffs